## VAN WINKLE *v.* CRABTREE.

[55 Pac. 831; 56 Pac. 74.]

1. ELECTIONS—CONSTRUCTION OF LAW.—The provisions of the election act generally known as the Australian Ballot Law relating to the space in which the marking of the ballots shall be done are mandatory, although there is no provision rendering void a ballot not marked in the prescribed manner.

2. IDEM—SPACE FOR DISTINGUISHING MARK.—Where an election law requires the elector to indicate his choice by a mark, the ballot should be counted if the mark is made anywhere in the space occupied by the name of the chosen candidate, so long as it does not obliterate such name.

3. VOTING MARKS ON BALLOTS.—Where an election law requires the voter to place a mark opposite the name of the candidate voted for, but does not define the character of such mark, a ballot should not be counted for either candidate where it contains a cross at the left of the name of one candidate, and at the left of the name of a rival candidate a single downward slanting stroke of the pencil, from left to right, crossed by a waving or curved line.

4. IDEM.—Under such an act, ballots marked opposite the names of all the candidates but one for a certain office, and not having any mark opposite his name, cannot be counted for the latter.

5. IDEM.—In view of such an election law, ballots having pencil lines drawn through the names of all the candidates for an office except one cannot be counted for the latter.

6. IDEM.—Where an elector has, with one exception, voted for the candidates of one party, and in that one instance has placed a mark on the line dividing the space between two candidates, the center of the mark being slightly inside the space of the candidate of the party for which he has cast his other votes, the ballot is properly counted for the latter; since, considering the tendency of electors to vote a partisan ticket, the elector's intention to vote for his party's candidate can be ascertained therefrom.

7. IDEM.—Under the Oregon law, a ballot should not be counted for a candidate at the left of whose name appears a cross, where two pencil lines are drawn through his name indicating that the voter had changed his mind after making the cross.

8. ELECTION CONTESTS—TESTIMONY OF ILLEGAL VOTERS.—The testimony of illegal voters as to the person for whom they voted is admissible in an election contest, where they voted in the belief that they had the right to do so; and the ballots cast by such persons may be deducted from those credited to their candidates.

9. VOTING MARKS ON BALLOTS.—Ballots bearing any mark in a given space should be counted for the candidate in whose space the mark is made, though parts of such marks extend into other spaces.

10. IDEM.—Where an elector, with one exception, voted for the candidates of one party, and the mark opposite that party's candidate for one office extended through the space reserved for his name, both above into the space containing the name of the office, and below into the space reserved for another candidate's name, the ballot is properly counted for the former, the elector's intention to vote for him being ascertainable therefrom.

11. DISTINGUISHING MARKS—REJECTING BALLOT.—A ballot on which an elector wrote in the space appropriated to candidates the name of a person for whom he desired to vote (such person not being a listed candidate) should not be rejected as bearing a distinguishing mark, under section 67 of the election law providing a punishment for voters who thus mutilate their ballots, notwithstanding it is possible that the name so written might afford a means of identifying the voter.

12. PRESUMPTION FROM BALLOT—There is no presumption that a person was not a resident of the precinct where he voted because he did not vote for precinct officers, though his ballot was endorsed "State, county, and dis't."

13. DISTINGUISHING MARK RENDERING BALLOT VOID.*—Under Laws, 1891, p. 8, § 67, as amended by Laws, 1895, p. 68 (Hill's Ann. Laws, p. 1169), prescribing a punishment for electors who place a distinguishing mark on their ballots so that the same may be identified, a ballot having the mark "O K" written on a blank space, beneath a set of candidates, is void.

14. IDEM.—Ballots having the words "voted for" written thereon after the name of one of the candidates, in addition to the required voting mark, carry a "distinguishing mark," which renders them void under the election law.

15. ELECTION CONTESTS—QUESTIONS REVIEWED ON APPEAL.—An appeal to the supreme court from a judgment upon the trial of an election contest does not bring up the cause for trial *de novo*, but the questions presented for review are the conclusions of law from the findings of fact.

16. VOTING MARKS ON BALLOTS.—Under an election law which provides for indicating the voter's choice by a mark in the space where the candidate's name is printed, or by writing the name of the chosen person if it does not appear on the printed sheet, a ballot having the names of all the candidates for a certain office marked out, and then one of such names written in a blank space left for extra names, cannot be counted at all; nor can a ballot having a line drawn through the name of each candidate of one party.

---

*NOTE.—See an exhaustive note on Distinguishing Marks which Invalidate Ballots under the Australian System with *Taylor* v. *Bleakley*, 49 Am. St. Rep., p. 240, S. C. 28 L. R. A. 683. The following cases consider to some extent the same question: *Miller* v. *Pennoyer*, 23 Or. 364, and note; *Whittam* v. *Zahorik*, 51 Am. St. Rep. 317, 329; *Lankford* v. *Gebhart*, 51 Am. St. Rep. 585, 587; *Dennis* v. *Caughlin*, 58 Am. St. Rep. 761 (29 L. R. A. 731); *Tebbe* v. *Smith*, 29 L. R. A. 673 (49 Am. St. Rep. 68); *Buckner* v. *Lynip*, 30 L. R. A. 354; *Parker* v. *Orr*, 50 L. R. A. 227; *Sego* v. *Stoddard*, 22 L. R. A. 468.

Stickers or Pasters were Allowed in the following cases: *Dewalt* v. *Bartley*, 15 L. R. A. 771 (28 Am. St. Rep. 844); *People ex rel.* v. *Shaw*, (under a statute) 16 L. R. A. 606; but were Disallowed in these cases: *State ex rel.* v. *Walsh*, 17 L. R. A. 364; *Re Contested Election of Little Beaver Township*, 27 L. R. A. 234; *Fletcher* v. *Wall*, 40 L. R. A. 617.—REPORTER.

ELECTION CONTEST—REVIEW—HARMLESS ERROR.—A judgment in an election contest will not be reversed because the court erroneously counted a void ballot for respondent, where it also counted void ballots for appellant, so that in spite of its error, the judgment is correct; and this even where respondent did not appeal, since it is the duty of the appellate court to declare the law applicable to the facts, and correct any error apparent on the record, whether it is complained of or not.

From Linn :    HENRY H. HEWITT, Judge.

This is a special proceeding, under Section 2544, Hill's Ann. Laws, to contest the defendant's right to the office of Clerk of Linn County, to which he was declared elected by the county canvassing board. On the official ballot used in said county at the last general election the names of the candidates for the office of county clerk were arranged in the following order :

| For County Clerk. | Vote for One. |
| --- | --- |
| 70.  Frank Crabtree of Linn County_____People's-Democratic-Silver-Republican |  |
| 71.  E. E. Lange of Linn County_____Regular People's |  |
| 72.  J. M. Marks of Linn County_____Prohibition |  |
| 73.  J. S. Van Winkle of Linn County_____Republican |  |

The plaintiff alleges that in certain designated precincts of said county the judges and clerks of election therein returned as cast for him a certain number of votes, but that he received in each of said precincts a greater number than were so counted for him, and prays that said ballots may be recounted, and that he be declared elected to said office. The defendant denies the material averments contained in plaintiff's notice of contest, and alleges, in substance, that there were counted as cast for him in said precincts but one thousand nine hundred and twenty-one votes for said office, when in fact there were polled for him a greater number than were so counted ; that plaintiff was credited with having received one thousand nine hundred and twenty votes ; and that such number was in excess of the legal

votes actually cast for him.    It is also alleged, *inter alia,*
that Harry Boyle and Fred Gross voted illegally at said
election, and that said votes were counted for plaintiff.
The reply having put in issue the allegations of new
matter contained in the answer, a recount was ordered ;
but the court refused to receive in evidence or to count
twenty-five ballots which plaintiff claims were cast for
him, and received in evidence and counted for defendant
eleven ballots to which plaintiff claims he was not en-
titled.    Copies of the ballots so rejected, numbered con-
secutively from 1 to 25, inclusive, and of those counted
for defendant, numbered from 26 to 36, inclusive, are
set out in the bill of exceptions ;    and the original bal-
lots, except No. 4, are also sent up with the transcript
for inspection.    Ballot No. 1 is marked with an X im-
mediately to the left of Van Winkle's name, and also
with a slanting stroke, made by a downward movement
of the pencil, from left to right, between the number
"70" and the name of "Frank Crabtree," which stroke
appears to have been somewhat obliterated by a waving
pencil line drawn over the same from the top to the bot-
tom.    Twelve ballots, numbered, respectively, 2, 5, 6, 7,
13, 14, 15, 17, 18, 19, 22, and 25, are marked with an X
between the numbers "70," "71," and "72" and the cor-
responding candidates' names, thereby leaving no mark
whatever between the number "73" and the name of
"J. S. Van Winkle."    Ballot No. 3 is marked in the
same manner as the twelve ballots just described, except
that between the number "73" and the name of "J. S.
Van Winkle" the surface of the paper appears to have
been abraded, as though the elector made in the space
indicated a mark, which he erased with a knife or other
sharp instrument.    Ballot No. 8 is marked in the same
manner as said twelve ballots, and, in addition thereto,

contains curving lines placed after the word "county," appended to the names of Crabtree, Lange, and Marks. Ballot No. 20 contains an X placed to the right of each of the candidates' names, except plaintiff's.

Ballots numbered 9, 21, and 24 are marked by pencil lines through all the candidates' names, county of residence, and political designation, except that of plaintiff. Ballot No. 16 contains a pencil mark drawn through all the candidates' names and their county residence, except plaintiff's, leaving their several party designations unmarked. Ballot No. 23 contains a pencil mark drawn through Crabtree's Christian name, and through the initials of Lange and Marks, leaving plaintiff's name unmarked. Ballot No. 4 has lines drawn through each of the party designations, except the word "Republican." Ballot No. 10 is marked in the same manner as ballot No. 1, except that the stroke thereon is made with a downward movement from right to left, and has no waving lines drawn over it. Ballot No. 11 is marked with an "X," the center of which appears to be a shade above the line between the names of Marks and Van Winkle; and ballot No. 12 has an "X" immediately to the left of, and also two pencil lines drawn through, Van Winkle's name. Ballot No. 26 has a horizontal line drawn through "70," the space to the right thereof, and most of the letters in the word "Frank." No. 27 has a horizontal line drawn immediately below the word "Frank." No. 28 has an "X" to the left of Crabtree's name, and also a horizontal pencil line about one-sixteenth of an inch in length immediately to the left of Lange's name. No. 29 contains an "X," the center of which appears to be a shade above the line between the names of Crabtree and Lange. No. 30 is marked by a nearly perpendicular line, extending through spaces Nos. 70 and 71, which is bisected by a nearly horizontal

line, extending from Crabtree's name. No. 31 has an "X" after the word "county," in space No. 70. No. 32 is like No. 31, with the addition of a similar mark to the left of Crabtree's name. No. 33 contains a mark which fills space No. 70, and a part of space No. 71, with the "X" apparently crossing on the line between the names of Crabtree and Lange. No. 34 is properly marked as indicating the elector's intention to vote for Crabtree; and it also contains the name "G. Bradley," written after the printed name of "W. W. Sanders," candidate for constable. No. 35 is properly marked as having been cast for Crabtree, and also contains the letters "O. K." written with a pencil in the space reserved for a candidate for the office of Attorney-General; and No. 36 is properly marked as having been cast for Crabtree, but on the back of the ballot there is indorsed the words, "State, county & Dis'ct."

Testimony having been admitted to show that H. R. Boyle (described in the answer as Harry Boyle) was not a citizen of the United States, or of the State of Oregon, and that J. F. Gross (mentioned in the answer as Fred. Gross) was not a resident of Crawfordsville Precinct, Linn County, Oregon, on the day of election, the court, over plaintiff's objection and exception, permitted said Boyle and Gross to testify that at said election each voted for Van Winkle for the office of county clerk. The court, deducting the votes so cast by Boyle and Gross from the number apparently cast for Van Winkle, found that he had received one thousand nine hundred and twelve, and the defendant one thousand nine hundred and thirteen, legal votes for the office of clerk of said county; whereupon the action was dismissed, and plaintiff appeals.

AFFIRMED.

For appellant there was a brief over the names of *Henry H. Hewitt, A. M. Cannon, Percy R. Kelly, J. N. Duncan,* and *N. M. Newport,* with an oral argument by *Messrs. Hewitt, Kelly,* and *Newport.*

For respondent there was a brief over the names of *James K. Weatherford, H. C. Watson, W. R. Bilyeu,* and *J. J. Whitney,* with an oral argument by *Messrs. Watson* and *Bilyeu.*

Mr. Justice Moore, after making the foregoing statement of the facts, delivered the opinion of the court.

It is contended by plaintiff's counsel that, by giving to the statute providing for the marking and counting of ballots cast at a general election the liberal construction to which it is entitled, an inspection of the twenty-five ballots which were rejected shows that the several electors who cast them intended thereby to vote for Van Winkle, and hence the court erred in refusing to count them for him.

A general statement of the provisions of the Australian Ballot Law, so far as applicable to the facts involved, is deemed essential to a clear understanding of the questions presented for consideration. An act of the legislative assembly approved February 13, 1891 (Laws, 1891, p. 8), appears in Hill's Ann. Laws, at p. 1169 *et seq.,* and provides that the white official ballot shall have printed thereon in bold-faced type the words, "Mark between the number and name of each candidate or answer voted for." The ballots shall be printed so as to give each elector a clear opportunity to designate his choice of candidates by making a mark to the left of the name of the candidate he wishes to vote for : Section 49, as amended by the act approved February 23, 1895 (Laws,

1895, p. 68).   The elector shall prepare his ballot by marking immediately to the left of the name of the candidate of his choice for each office to be filled, or by writing in the name of the person he wishes to vote for, which shall be done with an indelible "copying" pencil, or with pen and ink: Section 59, as amended by the act of February 23, 1895.   If an elector, by accident or mistake, spoils his ballot, so he cannot conveniently vote the same, he may, on returning said spoiled ballot, receive another in place thereof: Section 62.   The county clerk is required to provide for each election precinct in his county two ballot boxes, one of which shall be marked "General," and the other "State and District," respectively: Section 59.   If a majority of the judges of election are satisfied the elector is legally qualified to vote in that precinct only for "State" officers, the chairman shall immediately write with pen and ink upon the back of the ballot the word "State," and sign his (the chairman's) initials thereto.   If the elector is qualified to vote for district officers also, the chairman shall write as aforesaid the words "State and District."   In either such case the ballot shall then be deposited in the box marked "State and District:"   Section 61.   In the canvass of votes, any ballot from which it is impossible to determine the elector's choice for any of the officers shall be void, and shall not be counted:   Section 27.   Any ballot from which it is possible to determine the elector's choice for a part of the officers shall be counted for such part. The judges shall disregard misspelling or abbreviation of the names of candidates for office, if it can be ascertained from such ballot for whom it was intended:   Section 29.   Any elector who shall place any distinguishing mark upon his ballot, whereby the same may be identified, upon conviction shall be punished by a fine of not less than $50 nor more than $200:   Section 67.

1. If the provisions of the statute relative to marking ballots are mandatory, no error was committed in rejecting the twenty-five ballots complained of; but plaintiff's counsel argue that it can be ascertained from an inspection of the ballots for whom the elector intended to vote, and that the provision in relation to the counting of the votes cast renders the method of marking the ballots directory only, and hence they should have been counted for plaintiff. Under the provisions of section 49 of the act prior to its amendment, the elector was required to express his preference for the candidates whose names were printed on the official ballot by canceling or marking out the names of those who were not his choice; and it is claimed that the original method induced the electors to express their choice for plaintiff by marking out, or by placing a cross or other mark to the right or left of, the names of all other candidates for that office, and that the original mode of marking ballots, under the very liberal rule prescribed in section 29, should be controlling in determining the elector's choice as evidenced by the marks upon most of the ballots rejected. Every elector who performs the act of voting is presumed to know the law of his state applicable to the exercise of the right of suffrage; and, if he fails to comply with its provisions, his mistake or ignorance deprives him of the benefit to be derived from the practice of such right. This being so, his right to have his choice declared as he intended must depend upon his compliance with the law applicable thereto in force on the day of the election While the Australian ballot system is designed to purify elections by securing to the voter the prerogative of freely and privately selecting the candidates of his own choice, the law is also well calculated to promote the cause of general education, by compelling the masses to learn to read and write as a

condition precedent to the exercise of the right of suffrage, and to punish the illiterate by compelling them to admit their ignorance in public by asking aid in the preparation of their ballots.    To give effect to this latter purpose of the law, which is almost as important as its primary object, the statute should receive a reasonably strict construction.

While there is a conflict of judicial utterance upon the question as to whether, in the absence of a statute rendering a ballot void which is not marked in the prescribed manner, we believe the better reason supports the rule that the provisions of the act, so far as they relate to the space in which the marking should be done, should be construed as mandatory :   McCrary, Elec. (4 ed.), § 720 ;   *Attorney-General* v. *McQuade*, 94 Mich. 439 (53 N. W. 944) ;   *Attorney-General* v. *May*, 99 Mich. 538 (58 N. W. 483);   *Whittam* v. *Zahorik*, 91 Iowa, 23 (57 Am. St. Rep. 317, 59 N. W. 57);   *Parvin* v. *Wimberg*, 130 Ind. 561 (30 Am. St. Rep. 254, 15 L. R. A. 771, 30 N. E. 790) ;   *Bechtel* v. *Albin*, 134 Ind. 193 (33 N. E. 967) ; *Sego* v. *Stoddard,* 136 Ired. 297 (22 L. R. A. 468, 36 N. E. 204);   *Curran* v. *Clayton*, 86 Me. 42 (29 Atl. 930);   *People* v. *Board of Canvassers of Onondaga Co.*, 129 N. Y. 395 (14 L. R. A. 624, 29 N. E. 327).    In *Bechtel* v. *Albin*, 134 Ind. 193 (33 N. E. 967), Mr. Justice Hackney, in construing a similar statute of Indiana, says :   "That the legislature intended a strict observance of the rule so provided is further shown in the provision that if, in an attempted compliance, the voter, by accident or mistake, spoils, defaces, or mutilates his ballot, he can have another."

2.    True, the statute reads :   "Any ballot from which it is possible to determine the elector's choice for a part of the officers shall be counted for such part, but the remainder of the ballot from which it is impossible to

determine the elector's choice shall be void as to such
defective part, and such defective part shall not be
counted :'' Section 29. This clause, however, must be
construed in the light of the provisions relating to mark-
ing the ballot for the particular candidate of the elector's
choice. The voter, under the present act, manifests his
selection by a mark, and not by the absence of one ;
hence it would seem that, notwithstanding the law pre-
scribed that the mark should be made immediately to
the left of the name of the candidate voted for, the vote
should be counted if the mark was made anywhere in the
space occupied by the name of the candidate of the
elector's choice, so long as it did not obliterate such
name. If a voter were to write on his ballot, ''I hereby
vote for each republican candidate on this official ballot,''
no intelligent person could possibly mistake his intention
as thus expressed ; but it is not to be supposed, under
the very liberal provisions of section 29, that such a
ballot would be counted for any candidate of that party,
because the Australian Ballot Law requires of the voter
a comparison of the integrity, morality, and fitness of
the various candidates of each party for the offices to be
filled, and a conclusion thereon that the particular can-
didates whom the elector selects fill the measure of these
several necessary requirements. In view of these rules,
we will examine the ballots which were rejected by the
court.

3. It will be remembered that ballot No. 1 contains
to the left of Crabtree's name a single downward slanting
stroke of the pencil, made from left to right, over which
a waving or curved line is made with the pencil, and also
contains an ''X'' to the left of Van Winkle's name. The
statute has not prescribed the character of the mark
which an elector should make as indicative of his choice
of candidates ; and, this being so, the ballot in question

is as well marked for Crabtree as for Van Winkle ; and hence no error was committed in rejecting it. Ballot No. 10 has a slanting pencil line, made with a downward stroke, from right to left, which is placed to the left of Marks' name, and also has an "X" placed to the left of Van Winkle's name ; and, being like ballot No. 1 in respect to the mode of marking, it was properly rejected.

4.   Ballots numbered, respectively, 2, 3, 5, 6, 7, 8, 13, 14, 15, 17, 18, 19, 20, 22, and 25, contain no marks whatever in the space occupied by Van Winkle's name, and hence no error was committed in rejecting them.

5.   Ballots numbered 4, 9, 16, 21, 23, and 24, having pencil lines drawn through the names of all the other candidates except Van Winkle's, were not admissible in evidence as tending to prove plaintiff's right to the office ; and no error was committed in refusing to count them.

6.   In ballot No. 11 the point at which the lines of the "X" cross each other appears to be situated above the printed line which separates the names of Marks and Van Winkle.   The mark on this ballot plainly illustrates the rule, as the writer understands it, for determining the elector's choice, as prescribed in section 29, when any doubt exists in that respect.   It shows that the person who cast it voted for every Prohibition candidate but one whose name appeared upon the official ballot.   Experience demonstrates that the average voter is more of a partisan than a patriot ; or rather, perhaps, his bias unconsciously leads him to conclude that true patriotism at the polls is evidenced by an expression of his choice for each of the candidates nominated by the party of which he is a member, and that the persons so named by his party are, to his mind, superior in intelligence, in probity, and in business capacity, to any other candidates nominated by opposing parties for the offices to be filled

at the election. Those officers who are called upon to determine the result of the election from an inspection of the ballots cast thereat, must necessarily consider this peculiar trait of human character, whenever any doubt exists in relation to the expression of the elector's choice of candidates for office. Invoking this rule, and considering that the center of the "X" is situated above the printed line separating the names of Marks and Van Winkle, we think it is possible to determine from an inspection of the ballot that the elector who cast it chose Marks, the Prohibition candidate, for the office of county clerk; and, this being so, no error was committed in refusing to count ballot No. 11 for plaintiff.

7. It would appear from an inspection of ballot No. 12 that the elector who cast it had voted for Van Winkle by making an "X" immediately to the left of his name, but, for some unexplained reason, changed his mind; and, to make his intention perfectly plain to the judges of election, he drew two pencil lines through Van Winkle's name. No error, in our judgment, was committed by the court in rejecting ballot No. 12.

8. It is contended by plaintiff's counsel that the court erred in permitting H. R. Boyle and J. F. Gross to testify that they voted for Van Winkle for the office of county clerk, and in deducting from the number of votes which he received the two so claimed to have been cast by them. The primary object of the Australian Ballot Law is to protect the elector from intimidation, to accomplish which the secrecy of the ballot must be preserved; and, therefore, if he be a qualified voter, he cannot be compelled to testify for whom he voted at any election. It is generally held, however, that this rule cannot be invoked to shield a person who is not a legal voter. The wisdom of such a conclusion might not at first seem apparent, for it may be assumed that, if a person voted

at an election when he knew he was not entitled to exercise the right of suffrage, he must have been prompted to do so from some unworthy motive ;   and, if he would intentionally violate the law in the first instance, it might reasonably be inferred that he could be induced, when the result of the election was very close, to testify that he had voted for a candidate whom he desired to see defeated, when, in fact, he had voted for the candidate's opponent ; and thus, instead of correcting the wrong, he would be permitted to relieve the candidate of his original choice from a hostile vote.   Such would probably be the result if the person so voting knowingly intended to violate the law ; but every man is presumed to be innocent until he is proven to be guilty, and, indulging this presumption, Boyle, though not a citizen of the United States, nor having made any declaration of his intention to become such, may have believed that his father was naturalized before he attained his majority, and, upon becoming of age, he thereby became a legal voter.   So, too, it may have been that Gross, being ignorant of the election law, voted for county officers in Crawfordsville Precinct, of which he was not a resident, honestly thinking he had a legal right to do so.   If Boyle and Gross entertained the belief that might be attributed to them, their ballots, though illegal, were not superinduced by moral turpitude ; and under such circumstances it is reasonable to suppose that they would testify truthfully concerning their choice for county clerk, and hence they ought to be permitted to correct the error which they inadvertently committed.   That the majority of men are honest must be conceded ; and, such being the case, the greatest good may be expected to result from permitting persons who have voted illegally to testify concerning the candidates for whom they cast their ballots, notwithstanding that in

some instances the opposite result may follow. "There can be no doubt," says Mr. Justice STRAHAN, in *State ex rel.* v. *Kraft*, 18 Or. 550 (23 Pac. 663), "that one important object of the system of voting by ballot is secrecy, so that the voter may freely exercise his choice, uninfluenced by power, station, or the conditions by which he is surrounded; but this protection extends to the lawful voter only, and not to the spurious. It is the lawful voter around whom the law throws its protection, and not to him who assumes to exercise the sacred prerogative of a voter without being duly qualified." In support of the rule here announced, see McCrary, Elect. (4 ed.), § 490 *et seq.; People* v. *Pease*, 84 Am. Dec. 242, and notes at p. 269. The illegality of the ballots cast by Boyle and Gross having been established, the court committed no error in requiring them to testify concerning the persons for whom they attempted to vote, or in deducting from the votes cast for Van Winkle the ballots so given him by these witnesses.

9.   We now come to the consideration of the ballots that were counted by the court as having been cast for the defendant. From what has already been said, it is apparent that ballots numbered 26, 27, 29, 30, 31, 32, and 33 were properly counted as having been polled for Crabtree.

10.   Ballot No. 28 is marked immediately to the left of Crabtree's name with a heavy line, made by a downward stroke of the pencil, from right to left, and extending from a point above the printed line beneath the words "For County Clerk," to a point below the printed line beneath Crabtree's name. This heavy line is bisected near the middle of space 70 by a light line, made by a downward stroke of the pencil, from left to right, extending from about the same point above to about the middle of space 71. Joined to the left of this light line

is a heavier line, made by a downward stroke of the pencil, from left to right, commencing at about the same point above the printed line, beneath the words "For County Clerk," and terminating at a point where the heavy and light lines hereinbefore described intersect each other.   Beneath this juncture, and joined to the light line, appear two other heavier lines, made to the right by a slightly downward or nearly horizontal stroke of the pencil, from left to right, the first being in space 70, and the second in space 71, extending from the lower point of the light line about one-sixteenth of an inch to a point in the first initial preceding Lange's name.   This ballot, with but one exception, not considering the office of clerk, was cast for the People's-Democratic-Silver Republican candidates, which fact, being considered in connection with the fact that the several lines are so united as to constitute but one mark, leads us to conclude that it is possible to determine that defendant was the elector's choice for the office of county clerk, and that no error was committed by the trial court in counting this vote for Crabtree.

11.   In ballot No. 34 the elector wrote "G. Bradley" in the space appropriated to the candidates for the office of constable, between and just a little below the printed name "W. W. Sanders" and the word "Democratic." It is insisted by plaintiff's counsel that the name so written on this ballot constitutes a distinguishing mark, and, this being so, the court erred in counting it as a vote for any purpose.   Section 49 of the election law, so far as it relates to the arrangement of the ballot, reads :   "There shall be left at the end of the list of candidates for each different office blank spaces in which the elector may write the name of any person not printed on the ballot, for whom he desires to vote as candidate for such office." Section 59 provides that the elector, upon receiving a

white ballot, shall forthwith retire to one of the compartments provided for that purpose, and there prepare his ballot, by marking the same, etc., "or by writing in the name of the person he wishes to vote for." It is evident that the elector, intending to avail himself of these provisions of the law, attempted to write the name of his choice for constable in the proper place, but, by mistake, inserted it in the space reserved for that of W.W. Sanders. It is possible that the name so written might afford the means of identifying the person who cast the ballot; but, since the elector had the right to express his preference by writing on the ballot the name of the candidate of his choice for the office of constable, we cannot think that his vote should be rendered void because it was written three-sixteenths of an inch above the line set apart for that purpose; and hence the court committed no error in admitting said ballot in evidence, or in counting the vote for defendant.

12.  Ballot No. 36 has the following words indorsed thereon: "State, county & Dis'ct." It is maintained by plaintiff's counsel that, inasmuch as the person who cast this ballot did not vote for any candidates for the office of justice of the peace or constable, the indorsement in question shows that the elector was not a resident of the precinct in which he voted, and hence he had no right to vote for county officers, but having done so, the court erred in permitting the ballot to be offered in evidence, and in counting it as a vote for defendant. If it be admitted that the elector who cast this ballot was not a resident of the precinct in which he voted, he had no right to vote for county officers, for the organic law on that subject declares: "All qualified electors shall vote in the election precinct in the county where they may reside for county officers, and in any county in the state for state officers, or in any county of a congressional

district in which such electors may reside for members of congress:" Const. Or. Art. 2, § 17.   The ballot of any elector who is entitled to vote for state, county, and district officers should be placed by the judges of election in the box marked "General" (Election Law, § 60); but, inasmuch as the bill of exceptions does not show that the ballot in question was placed in the ballot box marked "State and District," the elector ought not to lose his right to vote for county officers because of such indorsement; and hence no error was committed in receiving said ballot in evidence, or in counting it as a vote cast for defendant.

13.   In ballot No. 35, in a blank space immediately below the names of the candidates for "Attorney General," appear the letters "O K," written with an indelible pencil; and it is contended by plaintiff's counsel that these letters constitute a distinguishing mark, by which the ballot might be identified, thereby rendering it inadmissible in evidence, and, this being so, the court erred in counting the vote for defendant.   Section 67 of the election law prescribes a punishment for the elector who "places a distinguishing mark upon his ballot whereby the same may be identified;" but the law nowhere, in positive terms, provides that a ballot so marked shall be rendered void.   If it should be held, however, that a ballot which had been marked by the elector in such a manner as to render its identification certain was not void, because the statute had not, in positive terms, so prescribed, the effect would necessarily be the destruction of the secrecy of the ballot which the Australian system was designed to promote; for, by the use of a few letters of the alphabet or other characters, such a permutation could be arranged by those who would corrupt the purity of the ballot as would accommodate many thousand voters, thereby identifying the person

who cast each ballot so marked, and evidencing the performance of an illegal agreement to thwart the purposes of the law.

14. The punishment of the voter would be wholly inadequate to correct the evil which such a method of marking the ballots would necessarily entail; for, if one honest vote were polled in each precinct, it would be extremely difficult to prove in an action that the person charged with illegally marking his ballot was guilty thereof; but, if it be held that the ballot so marked is void, the elector who cast it is punished to some extent by being disfranchised at the election when the illegal ballot was deposited, thereby promoting the secrecy which the law enjoins, and preventing the commission of the offense which public policy condemns. In our judgment, the interest of the state demands that a ballot which has been marked in such a manner as to be identified should be declared void, and that our statute impliedly commands that such an effect should follow an illegal marking of a ballot. In *State ex rel.* v. *Ellis*, 111 N. C. 124 (17 L. R. A. 382, 15 S. E. 938), it is held that the inscription "O K" upon the back of ballots is a device which renders them void under an act of the Legislative Assembly of North Carolina, which prescribes that ballots shall be "without device." It is quite evident that the ballot in question can be identified by the distinguishing letters; and, it seeming to be conceded that the elector placed the marks on his ballot, it follows that the court erred in admitting it in evidence, and in counting it as a vote given for defendant.

15. Considering only the errors assigned in the notice of appeal, and refusing to count ballot No. 35 for defendant, the consequence is a determination that each party received an equal number of votes; but whether this result affirms the judgment because plaintiff should

show a superior right to the office, is not necessary
to a decision of the case, for, in an appeal from a judg-
ment given by the court upon the trial of an election
contest, the cause is not tried here *de novo*, but the ques-
tion presented for review must necessarily be, are the
conclusions of law deducible from the findings of fact?
The respondent, being satisfied with the judgment ap-
pealed from, has not assigned any errors, in the absence
of which he cannot be heard to complain; but, in modi-
fying the court's conclusions of law so as to work a
reversal of or seriously to affect the judgment, the
speedy settlement of the issue involved, which seems to
be necessitated by the statute (Hill's Ann. Laws, § 2547),
demands an examination of the conclusions of law which
are not complained of, if to do so would result in an
affirmance of the judgment, which must be presumed to
be correct. With these introductory remarks, we will
examine the findings of fact relative to certain ballots
which the court, as a conclusion of law, counted as
having been given to plaintiff.

16. On a ballot described in finding of fact number
six, the words "voted for" were written with an indeli-
ble pencil after the words "J. S. Van Winkle of Linn
County;" and a mark was also made immediately to
the left of said name. Finding of fact number seven
describes a ballot which is marked in the same manner,
except that it contains no mark to the left of Van Win-
kle's name. Finding of fact number eight is as follows:
"On a ballot of those cast in West Albany Precinct at said
election, a line was drawn, in indelible pencil, through
the name 'E. E. Lange of Linn County, Regular People's,'
and another line immediately beneath the words 'J. J.
Marks of Linn County, Prohibition,' and in the space
between the words 'J. S. Van Winkle of Linn County'

34 OR.—31.

and the word 'Republican' appeared written, in indelible pencil, the word 'voted;' there being no other marks or designations on said ballot for the office of county clerk.'' These three ballots contain a distinguishing mark by which they might be identified, and, such being the case, they ought not to have been counted for plaintiff. Finding number nine is to the effect that on a ballot cast in West Albany Precinct a pencil line was drawn through the name of each candidate for the office of county clerk, but, in the space below said names, the name of ''J. S. Van Winkle'' was written. Finding of fact number thirteen is as follows : ''On a ballot of those cast at said election in North Brownsville Precinct, there appeared a line, made by indelible pencil, drawn through the name of each Republican candidate on said ticket and the name of the county printed therewith, including the words 'J. S. Van Winkle of Linn County;' there being no other mark of any kind on said ballot for the office of county clerk.'' The ballots described in findings of fact numbered nine and thirteen are not marked in the manner prescribed by law, and, such being the case, they ought not to have been counted for plaintiff.

These conclusions do not change the result reached by the trial court, in view of which the judgment is affirmed.

Affirmed.

On Motion for Rehearing.

' Mr. Justice Bean delivered the opinion.

This cause was tried without the intervention of a jury. A recount was made of all the ballots cast for the office in question, and the court, having made findings of fact upon all the disputed ballots, decided that the defendant was elected by one vote, and entered judg-

ment accordingly.   The plaintiff and contestant ap-
pealed, assigning as error sundry rulings and conclusions
of the court against him.   Upon the hearing of the
appeal it was determined that none of such assignments
were well taken, except the one based upon the action
of the court in counting for the defendant the ballot
described in finding number 26, and marked with the
letters "O K."    This conclusion would necessarily leave
the vote a tie, were it not for the fact that it affirmatively
appears from the findings of the court and its conclusions
of law that it also illegally counted at least two ballots
for the contestant.   Among the unquestioned findings
are numbers 6 and 7, to the effect that certain ballots,
with the words "voted for" written with an indelible
pencil on the face thereof, were counted for the plaintiff
and contestant, and, within the rule which renders the
"O K" ballot void, should not have been counted;  so
that, notwithstanding the court erroneously counted the
"O K" ballot for the defendant, he still received a greater
number of legal votes than the plaintiff.   It is true, the
defendant did not appeal;  but he had no occasion or
right to do so, because the judgment was in his favor.
But, nevertheless, we cannot reverse the judgment upon
this record, which shows upon its face that certain ballots
were improperly counted for the plaintiff, and that by
excluding them the judgment is correct, although it
may have been based upon a wrong reason.   The condi-
tion is that there were three ballots cast, each of which
had upon the face thereof such a distinguishing mark as
to render it void under the statute;  but they were all
counted by the court below,—two for the plaintiff, and
one for the defendant.   The plaintiff insists that the
judgment should be reversed because one of them was
counted for the defendant, notwithstanding the fact that
the other two were counted for himself.   It is claimed,

however, that the ballots referred to in findings numbered 6 and 7 are not in the record, and that no question is made as to their competency or admissibility in evidence. This may be true, but we are not dealing with the ballots, but with the ultimate facts as found by the court; and the question for our determination is whether, upon such facts, the judgment should be affirmed or reversed. And, as it appears that there were cast for the defendant more legal votes for the office of county clerk than were cast for the plaintiff, the judgment of the court below is manifestly right, and ought to be affirmed. While the defendant could not claim any advantage from the ruling of the court against him for the purpose of obtaining in this court a more favorable judgment than he obtained in the court below, yet he is entitled to the benefit of any error made by such court in counting ballots for the plaintiff, for the purpose of upholding and sustaining the judgment from which the appeal is taken.

The other questions referred to in the petition for rehearing were all carefully considered, and are disposed of in the former opinion, and we do not deem it necessary to go over them again.

REHEARING DENIED.