LANE, RESPONDENT, *v.* BAILEY, APPELLANT.

(No. 1,983.)

(Submitted January 4, 1904.   Decided February 11, 1904.)

*Elections—Contest—Verification of Statement — Registration of Voters—Failure to Take Oath—Registry Agent—Failure to Perform Duty—Effect—Trial by Court—Leading Questions—Incompetent Evidence — Appeal — Insufficiency of Evidence — Sufficiency of Exception—Evidence—Identification of Ballot—Secrecy of Ballot—Waiver—Statutory Construction.*

1.  Section 2014, Code of Civil Procedure, prescribes that in election contests a statement of the grounds of contest must be verified by contestant's affidavit that the matters and things therein contained are true. *Held,* that a verification of such a statement, in conformity with Section 731, was sufficient.

2.  Certain persons applied for registration, giving the agent all information requested, and their names were entered in the official register, check lists, etc. The oath required by Section 1209, Political Code, was not administered, the agent testifying that he did not think it was necessary. *Held,* that the failure to take the oath did not disqualify the electors.

3.  Failure of registry agent to perform his duty does not deprive a qualified elector of the right to exercise his franchise.

4.  Election statutes, being intended to promote purity in public elections to the end that a full and fair expression of the public will may be had, are remedial and beneficial, and should be liberally construed.

5.  Where a cause is tried to the court without a jury, the admission of incompetent evidence will not afford ground for reversal, the presumption being that the court did not consider it in arriving at its conclusion.

6.  Code of Civil Procedure, Section 1151, provides that a final decision in an action or proceeding shall be deemed excepted to by the adverse party, no bill of exceptions being required. Section 1152 provides that, when the exception is to the verdict or decision on the ground of the insufficiency of the evidence to justify it, the objection must specify the particulars in which the evidence is alleged to be insufficient. *Held,* that a specification of error, in an election contest, of "insufficiency of the evidence to justify the findings of fact made by the court herein," was insufficient to permit a review thereof.

7.  In an election contest it appeared that certain persons conspired to colonize voters by employing men prior to election to go into the county to obtain work and vote a certain ticket. Their expenses were paid, and the conspiracy was carried out, the colonized voters knowing the illegal purpose of their employment, and perjuring themselves in obtaining registration. *Held,* that their declarations, as well as those of the original conspirators, from the time of the negotiations for their employment up to and during the election, which were germane to the conspiracy or a part of the *res gestae,* were admissible.

8.  Where in an election contest it does not appear from the direct evidence of the voter for whom the ballot was cast, circumstantial evidence is admissible to establish the fact.

9.  In an election contest in which a conspiracy to colonize voters was alleged, contestant introduced testimony tending to show that men employed as ranch hands were hired mainly for political purposes, witnesses testifying that there was no demand for ranch hands in the neighborhood, that the employer had no special use for men hired, and that most of them simply "killed time." *Held,* that the exclusion of the testimony of such a voter, offered by contestee, as to whether he was able to state whether the men were kept busy during the time they were at the ranch, and whether he knew and could state when a man was doing a day's work and was kept busy, was error.

10. Where, in an election contest, testimony erroneously excluded does not affect sufficient votes to overthrow the decision of the lower court, such exclusion is not ground for reversal.

11. An appellate court will not reverse a judgment merely because the lower court committed error: it is only when the error has materially affected appellant's rights on the merits of the case.

12. Political Code, Section 1364, as amended by Session Laws of 1901, page 120, authorizes judges of election to assist voters who cannot read and write, etc., in making out their ballots, the judges to certify on the outside of the ballot that it was made out with their assistance. Section 1358,

as amended by Session Laws of 1901, page 118 *et seq.*, provides that no elector shall place any identifying mark on his ballot. Section 1413 authorizes the use of ballots as evidence in election contests. *Held* that, where it appeared in an election contest that a voter's ballot had been so indorsed, it was necessary to show that it could not be thereby identified, in order to let in, as secondary evidence, testimony as to how he voted.

13. The privilege of refusing to testify as to how he voted may be waived by an elector.

*Appeal from District Court, Rosebud County; C. H. Loud, Judge.*

ELECTION contest by Clarence R. Lane against Charles W. Bailey. Judgment for plaintiff, and defendant appeals. Affirmed.

*Mr. Sydney Sanner, Mr. E. J. Dierks,* and *Mr. F. V. H. Collins,* for Appellant.

*Mr. T. J. Porter,* and *Mr. J. C. Lyndes,* for Respondent.

MR. COMMISSIONER CALLAWAY prepared the opinion for the court.

Election contest. Clarence R. Lane, an elector of Rosebud county, contests the right of Charles W. Bailey to hold the office of county clerk. Bailey and one Roderick McRae were opposing candidates for the office, Bailey being the democratic, and McRae the republican, candidate. The canvassing board found that Bailey had received a majority of the votes cast for the office of county clerk, and declared him elected. As ground for contest, Lane alleged that a number of persons, exceeding contestee's majority, who were not entitled to vote in said county, had voted for contestee; that they were not *bona fide* residents thereof, but had been brought into the county thirty days or thereabouts prior to the election, pursuant to a conspiracy entered into by James S. Hopkins, Fred Ramsey, William Mc-Carthy, William J. Nix and others, to colonize Rosebud county by illegally importing and bringing into the county large numbers of persons shortly before the election, and causing them to be registered and to vote the democratic ticket, and for said

Charles W. Bailey; which conspiracy, according to the allegations of the complaint, was accordingly carried out. The complaint, or statement of contest, contains this allegation: "That said persons so illegally brought into said county of Rosebud were induced by the aforesaid parties to go into said county under a promise of unusual and exorbitant wages being paid them for their services as laborers, and on the further promise and representation that they could return to their various homes without expense as soon as the election was over."

To the complaint the contestee filed an answer which, in addition to a general denial, alleged that Bailey was in fact elected over McRae by a majority of 82 legal votes, for the reason that at Hathaway precinct 18 persons, and at Rosebud precinct 49 persons, had illegally registered without ever having taken or subscribed, or offered to take or subscribe, the oath prescribed by Section 1209 of the Political Code, as amended. This the contestant denied in his reply, and further alleged that said persons were in fact duly qualified voters in all respects, and that if they did not take the oath it was the fault of the registry agent, and not the fault of the voters.

The pleadings are of great length, and only the gist of the issues is given here. Trial was to the court, sitting without a jury. The court found that 24 illegal votes had been cast and counted for the contestee, deducted the same from the number of votes received by him, and declared McRae elected, and entitled to the office of county clerk. From this judgment the contestee has appealed.

1. Counsel for contestee urge that the complaint is not verified as required by the statute, which prescribes that the statement must be verified by the affidavit of the contesting party that the matters and things therein contained are true. (Code of Civil Procedure, Sec. 2014.) The verification attached was in the usual form required by Section 731 of the same Code when a party to an action verifies a pleading. This was a substantial compliance with Section 2014, *supra,* and is sufficient. (*Kirk* v. *Rhoads,* 46 Cal. 398.)

2.    Contestee insists that the 67 men named in his answer were not qualified voters, because they failed to take the oath set forth in Section 1209 of the Political Code, as amended. (Session Laws 1897, p. 118.)    The proof shows that the electors presented themselves before the registry agent for the purpose of complying with the law which requires a voter to be registered.    They gave the agent all the information he asked concerning their qualifications as voters, and he entered their names as such upon the official register.    According to his testimony, he did not think it was necessary for them to take the oath.    Their names regularly appeared upon the official register, the copies thereof, and the check lists, as well as upon the lists posted in the precincts and in the office of the county clerk.    The fact that their names appeared in the check lists and copies of the official register was *prima facie* evidence of their right to vote.    (Political Code, Sec. 1234, as amended; Session Laws 1897, p. 123.)    That the electors were registered without taking the oath was not their fault.    That a registry agent neglects his duty should not deprive an elector of the right to exercise his franchise.    If the elector may be deprived of his right to vote in this manner, an unprincipled registry agent may change the political status of a precinct at will, and by concerted action on the part of a number of such the political complexion of a county may be easily changed, and the popular will effectually thwarted.    If the elective franchise may be thus tampered with, incalculable abuses will creep into the state.    The purpose of the statute is to prevent any but legal electors from voting. It demands good faith.    It is not intended to prevent those who are qualified to vote from doing so.    Before the elector is entitled to be registered he may be compelled to take the oath prescribed in Section 1209, *supra*—the statute contemplates that he shall be compelled to take it.    If he fails to take the oath through the fault of the registry agent, and is challenged on that ground before that officer closes his book, he may qualify on election day.    This is clearly one of the purposes of Sections 1213 and 1214 of the Political Code, as amended.    (Session Laws 1897, p. 121 *et seq.*)    Section 1213 provides that, on the

next day succeeding that on which the registration of electors shall be closed, the registry agents must with all reasonable expedition, and within four days, prepare and cause to be written or printed a full, complete and true list of all the names registered by them and then remaining on the official register for each election precinct, alphabetically arranged, commencing with the surname of each, and then must write or print such reasonable number of copies of each registration district list as they may deem necessary, showing on one sheet, but under separate headings in such list, the registered voters in each precinct in the district, and post copies of the same in at least five public and conspicuous places within each and every district to which they apply, and shall also furnish one, attested by his oath as true and correct, to the county clerk.   Section 1214 provides that: "The registry agents must give notice in said lists that they will receive objections to the right to vote of any person so registered until six o'clock p. m. on the Saturday previous to the day of election; and also requesting all persons whose names may be erroneously entered in said lists or erroneously canceled upon the the 'Official Register' to appear at the proper registry office and have such error corrected.   Such objections to the right to vote of any person registered must be made only by a qualified elector, in writing duly verified, setting forth the grounds of objection or disqualification.   The registry agent before whom any such affidavits are made must carefully preserve the same and deliver them, with the 'Check List' and other papers required by this chapter, to be delivered to the judges of election, as in this chapter provided, and he must write distinctly opposite to the name of any person to whose qualifications as an elector objections may be thus made, the words 'to be challenged' or words to that effect.   It is the duty of the judges of election, if on election day such person who has been objected to applies to vote, to test, under oath his qualifications and if he is found to be disqualified, from any cause under the law, or if he refuses to take an oath as to his qualifications he must not be permitted to vote.   *   *   *"

McCrary, in his work on Elections, says: "It is a rule well

grounded in justice and reason, and well established by author-
ity and precedent, that the voter shall not be deprived of his
rights as an elector, either by the fraud or a mistake of the
election officer, if it is possible to prevent it." (4th Ed. Sec.
231.)

Section 2 of Article VI of the North Carolina Constitution
provides that: "It shall be the duty of the general assembly
to provide from time to time for the registration of all electors,
and no person shall be allowed to vote without registration, or
to register, without first taking an oath to support and maintain
the Constitution and laws of the United States, and the Consti-
tution and laws of North Carolina not inconsistent therewith."
The supreme court of that state says: "This section of the Con-
stitution provides that the 'general assembly' shall pass regis-
tration laws, and that no one shall be entitled to register without
taking an oath, and that no one shall vote who is not registered.
This provision of the Constitution, that no one shall be entitled
to register without taking an oath to support the Con-
stitution of the state and of the United States, is
directed to the registrars. It must be to them and
to them alone, as is said by this court in *Southerland*
v. *Goldsboro,* 96 N. C. 49, 1 S. E. 760. But if the registrar,
through inadvertence, registers a qualified voter, who is entitled
to register and vote, without administering the prescribed oath
to him, shall he, for this negligence of the officer, be deprived
of his right to vote, and thereby the will of the majority de-
feated? And if this omission was not through inadvertence,
but with a view to entrap the voter and thus defraud him out
of his vote, it is much more the reason why he should not be,
and that such methods should not be allowed to prevail. We
do not hold that, where a registrar proposed to administer the
oath, and the party wishing to be registered refuses to take the
oath, it is the duty of the registrar to register him. We would
say that under such circumstances he should not be registered.
*  *  * And a qualified elector cannot be deprived of his
right to vote, and the theory of our government that the majority

shall govern be destroyed, by either the willful or negligent acts of the registrar, a sworn officer of the law." (*Quinn* v. *Lattimore,* 120 N. C. 426, 26 S. E. 638, 58 Am. St. Rep. 797.)

In *State ex rel. Brooks* v. *Fransham,* 19 Mont. 273, 48 Pac. 1, the court adopts the following quotation from *People* v. *Wood,* 148 N. Y. 142, 42 N. E. 536: "We can conceive of no principle which permits the disfranchisement of innocent voters for the mistake or even the willful misconduct of election officers in performing the duty cast upon them." And see *State* v. *Sadler,* 25 Nev. 131, 58 Pac. 284, 59 Pac. 546, 63 Pac. 128, 83 Am. St. Rep. 573; *Moyer* v. *Van De Vanter,* 12 Wash. 377, 41 Pac. 60, 29 L. R. A. 670, 50 Am. St. Rep. 900; *Bowers* v. *Smith,* 111 Mo. 45, 20 S. W. 101, 33 Am. St. Rep. 491.

Election statutes, being intended to promote purity in public elections, to the end that a full and fair expression of the public will may be had, are remedial and beneficial, and should be liberally construed. We therefore hold that the electors of Hathaway and Rosebud precincts were not disqualified because, through no fault of theirs, they failed to take the oath prescribed. (*Stackpole* v. *Hallahan,* 16 Mont. 40, 40 Pac. 80, 28 L. R. A. 502.)

3. Under the head of "leading questions" contestee presents twenty-six specifications of error. We find that but three questions of the twenty-six were objected to upon the ground that the questions were leading. We cannot say that the court committed reversible error in overruling contestee's objections to the three mentioned. (*Hefferlin* v. *Karlman,* 29 Mont. 139, 74 Pac. 201.) No jury was in attendance, and the court does not appear to have abused its discretion in this respect.

4. The court permitted contestant to introduce in evidence some incompetent testimony, against contestee's objections, and upon this branch of the case, as presented, the contestee assigns numerous errors. A great deal of testimony was adduced—the transcript consists of over 480 pages of typewriting. As we shall hereafter show, we are not permitted to look to the sufficiency or insufficiency of the evidence to sustain the court's find-

ings and judgment. What we have just said implies that there was testimony, and a great deal of it. The record has received a thorough sifting by respective counsel. We have examined all the assignments of error in detail, and on this point reaffirm the rule laid down in *Finlen* v. *Heinze,* 28 Mont. 548, 73 Pac. 123, in which the court said: "But the cause was tried to the court, sitting without a jury, and the presumption must be indulged that such evidence, if improperly admitted, was not considered in arriving at a conclusion."

5. As to the insufficiency of the evidence. This case comes up on a bill of exceptions, duly settled and allowed. Counsel have indulged in considerable argument as to whether, in an election contest, a motion for a new trial is proper or permissible. That matter not being in issue in this case, we express no opinion thereon, counsel having elected to appeal upon a bill of exceptions. That a bill of exceptions is proper in a case of this nature admits of no doubt. If, however, a case is presented to this court upon a bill of exceptions, the bill must be prepared conformably to the statutes prescribed for the preparation of such in other cases. This being true, it follows that the bill must be prepared in accordance with Article I, Chapter VII (Sections 1150-1158, inclusive), of the Code of Civil Procedure. By Section 1151 we find that certain actions of the court are deemed excepted to by the adverse party, and no bill of exceptions is required to present them; among these is "the final decision in an action or proceeding." Section 1152 provides: "When the exception is to the verdict or decision upon the ground of the insufficiency of the evidence to justify it, the objection must specify the particulars in which such evidence is alleged to be insufficient." Appellant's specification of error No. 238 is "insufficiency of the evidence to justify the findings of fact made by the court herein." We thus see that appellant relies for a reversal of the case upon the *insufficiency* of the evidence, and this exception is not presented as required by the statute. (Section 1152, *supra; Robertson* v. *Longley,* 28 Mont. 128, 72 Pac. 422.) Thus we are not permitted to proceed further with this so-called exception.

6.   Contestee insists that it was error for the court to admit in evidence the declarations of the alleged conspirators, and says that before declarations of conspirators can be admitted it must first be shown independently that a conspiracy existed; and then their admissibility is limited to such as were made during the pendency of the conspiracy, and in furtherance of its plans; and under these rules they are not admissible when they relate to a past transaction.

The correctness of these general principles will not be disputed. In answer to this it is sufficient to say that even a cursory inspection of the transcript discloses that there was evidence sufficient to justify the conclulsion that the conspiracy charged in the statement of contest did in fact exist; that the conspiracy was for the purpose of employing a sufficient number of men to carry the county in the interest of the Democratic ticket, or a portion of it; that in furtherance of it a large number of men were employed a little over a month prior to the election, with the understanding that they were to go into Rosebud county for the purpose of obtaining employment for one month, and of voting the Democratic ticket; that their expenses were to be paid in traveling to and from Rosebud county; that a large number of them actually registered and voted in Rosebud county; that, indeed, the conspiracy was actually carried out. These men, if the testimony be true, knew the illegal purposes for which they were employed, perjured themselves in order to obtain registration, violated the election laws of the state, and thus became parties to the conspiracy themselves. Their declarations, as well as those of the persons who instigated the unlawful acts (the original conspirators), during the pendency of the conspiracy—while the negotiations for the men's employment were pending, after they were employed, during the election—and which were germane to the conspiracy, or a part of the *res gestae,* are admissible in this case. The conspiracy existed as between the parties to it until all its ends were accomplished. (See *State* v. *Byers,* 16 Mont. 565, 41 Pac. 708; *Pincus* v. *Reynolds,* 19 Mont. 564, 49 Pac. 145;

*State* v. *Dotson,* 26 Mont. 305, 67 Pac. 938; Underhill on Evidence, Sec. 69; Underhill on Criminal Evidence, Secs. 491, 492, 493; Jones on Evidence, Sec. 255.)

7. Under the rule that, where in an election contest it does not appear from the direct evidence of the voter for whom the ballot was cast, circumstantial evidence is admissible to establish the fact (*Boyer* v. *Teague,* 106 N. C. 576, 11 S. E. 665, 19 Am. St. Rep. 547; *Sorenson* v. *Sorenson,* 189 Ill. 179, 59 N. E. 555; *Black* v. *Pate,* 130 Ala. 514, 30 South. 434; *People* v. *Pease,* 27 N. Y. 45, 84 Am. Dec. 242; McCrary on Elections (4th Ed.), p. 363), and for the purpose of establishing that a conspiracy existed, contestant introduced considerable testimony tending to show that a number of men employed by Ramsey as ranch hands, and who voted at the election, were hired mainly for political purposes, and not to work on the ranch.

Witnesses testified that there was no demand for ranch hands in the immediate neighborhood of Ramsey's ranch, and that Ramsey had no special use for the ten men he had there. Testimony was given tending to prove that these ten men, or most of them, simply "killed time." Contestee introduced considerable evidence to contradict this line of testimony, and excepted to several rulings of the court upon questions his counsel asked the different witnesses. For example, the witness Miller, one of the alleged illegal voters who was employed on the Ramsey ranch, and who had qualified himself to answer, was asked: "From your observation, are you able to state whether or not they were kept busy during the time they were there?" Also: "From your experience and observation do you know, and can you state, when a man is doing a day's work and is kept busy?" Contestant objected to these questions as incompetent, and the objections were sustained. This testimony, having been offered in contradiction of that on part of contestant, should have been admitted, and the court erred in sustaining the objections, but the case cannot be reversed on that account. The testimony called for by the two questions just quoted related solely to the conduct of the men employed at Ramsey's ranch, and who voted

at Kirby. The court found that only six illegal votes were cast at that precinct. These it deducted from the total vote counted for contestee by the election officers. In its findings and judgment the court found McRae elected over contestee by nine votes. Therefore, had the testimony called for been admitted, and the six illegal votes been counted for contestee, McRae would still have a majority of three.

An appellate court will not reverse a judgment merely because the lower court committed error; it is only when the error has materially affected appellant's rights on the merits of the case.

8. The court found that one Joko Petrovich was an illegal voter, and that he voted for the contestee at the precinct of Forsyth. Contestee sought to prove that Petrovich in fact voted for McRae, the Republican candidate. For this purpose he placed Terrett, one of the judges of election, on the stand. Terrett testified that Petrovich said he could not make his ballot out, and that Marcyes, one of the other judges, made it out for him, and that he (Terrett) saw Marcyes mark it. Then this question was asked: "Now, you may state how Mr. Petrovich's ticket was marked by Mr. Marcyes." Upon objection being lodged by contestant, the court ruled as follows: "As I recollect the law, if it is marked by a judge, the ticket should be indorsed as being marked by a judge. If that is true, the ticket is the best evidence, and should be produced. It is merely secondary evidence as to how it was marked. I will sustain the objection under and by virtue of the provisions of Section 1364 of the Political Code, as amended."

Section 1364 of the Political Code, as amended, provides: "Any elector who declares to the judges of election, or when it appears to the judges of election that he cannot read or write or that because of blindness or other physical disability he is unable to mark his ballot, but for no other cause, must upon request receive the assistance of two of the judges, who shall represent different parties, in the marking thereof, and such judges must certify on the outside thereof that it was so marked with

their assistance, and must thereafter give no information regarding the same. The judges must require such declaration of disability to be made by the elector under oath before them, and they are hereby authorized to administer the same. No elector other than one who may, because of his inability to read or write or of his blindness or physical disability, be unable to mark his ballot, must divulge to any one within the polling place the name of any candidate for whom he intends to vote, or ask, or receive the assistance of any person within the polling place in the preparation of his ballot." (Session Laws 1901, p. 120.)

Whether the ballot is the best evidence as to how Petrovich voted depends upon whether it may be identified; if it can be identified, it is the best evidence; if it cannot be, then the testimony of one who knows how it was marked is the best evidence. Having shown that the ballot bore the certificate of the judges, in order to introduce the testimony of Terrett it was incumbent upon contestee to show that the ballot could not be identified. If Petrovich's ballot was the only one bearing the certificate of the judges, Terrett and Marcyes, such certificate would serve to identify it; but if there were several ballots cast at Forsyth, under the provisions of Section 1364, *supra,* all of which bore the certificate of the said judges, then it is probable that Petrovich's ballot could not be identified. No elector shall place any mark upon his ballot by which it may afterwards be identified by him. (Section 1358, Political Code, as amended; Session Laws 1901, p. 118 *et seq.*) And the judges should not place any distinguishing marks thereon, except as provided by law; the law evidently contemplates that the same certificate, in effect, shall be placed upon all ballots to which the judges certify. Upon proof that Petrovich's ballot could be identified, the court could have ordered the same produced, under the provisions of Section 1413 of the Political Code. The court was therefore right in excluding the testimony.

9. At the precinct of Kirby, McRae received but five votes. In order to show that all of the illegal votes cast there were for contestee, contestant produced five witnesses who were legal

voters in that precinct, each of whom testified that he voted for McRae. The admission of this testimony was objected to by contestee as incompetent, irrelevant and immaterial. No question was raised as to whether the ballots of these several voters could be identified.

Counsel insist that under our voting system an absolutely secret ballot is contemplated, and to this end extraordinary precautions are provided for; bystanders are prohibited from approaching within a given distance from the voting booth; the voter is prohibited from placing a distinguishing mark upon his ballot; he must retire and mark his ballot alone, and fold it so its contents cannot be discovered. These precautions are provided for the protection of the voter. The design is to make it impossible for others to prevent him from exercising his own free will. It is generally held that a legal voter may refuse to testify as to how he voted, but this is a privilege he may waive. (*Van Winkle* v. *Crabtree,* 34 Ore. 462, 55 Pac. 831, 56 Pac. 74; *Boyer* v. *Teague,* 106 N. C. 576, 11 S. E. 665, 10 Am. St. Rep. 547; *Black* v. *Pate,* 130 Ala. 514, 30 South. 434; *Vallier* v. *Brakke,* 7 S. D. 343, 64 N. W. 180; *Dixon* v. *Orr,* 49 Ark. 238, 4 S. W. 774, 4 Am. St. Rep. 42; Cooley's Constitutional Limitations, 762; McCrary on Elections (4th Ed.), Secs. 438, 491, 492.)

There is reason in this rule. While public policy requires that all electors be enabled to cast their ballots in absolute secrecy and with the utmost freedom, yet it is also to the public interest that a correct expression of the popular will be ascertained. Hence, when the validity of an election is being inquired into, legal voters are encouraged to give testimony concerning it. Courts should give a wide latitude to such inquiries. Nothing concerns the people nearer than the purity of their elections. A fundamental principle of our government is that the majority shall control. When the popular will is subverted by conspiracies and other illegal practices, the searchlights of the courts should be fully turned on.

10. After a diligent examination of contestee's specifications, we find no reversible error in the record. In a number

of instances the proper objection was not made to the admission of testimony, and in others the right reason for the motion to strike out was not assigned. Again, we find that where the court in several instances sustained contestant's objections, perhaps erroneously, the error was cured by the subsequent testimony of the several witnesses to whom the questions were put.

For the foregoing reasons, we are of the opinion that the judgment should be affirmed.

PER CURIAM.—For the reasons given in the foregoing opinion ,the judgment is affirmed.

(Submitted January 4, 1904.   Decided February 11, 1904.)