FINLEN, APPELLANT, v. HEINZE ET AL., RESPONDENTS.

(Nos. 1,824, 1,839.)

(Submitted April 1, 1903.   Decided July 24, 1903.)

*Mines — Claims — Assignment — Validity — Specific Performance — Consideration — Adequacy — Burden of Proof —Conspiracy — Champerty — Evidence — Judgment — Modification—New Trial—Misconduct of Judge—Appeal— Assignments of Error—Sufficiency—Presumptions—Harmless Error—Review—Briefs—Costs.*

1.  Under Code of Civil Procedure, Section 1173, providing that, where the notice of motion for a new trial designates, as a ground, the insufficiency of the evidence to justify the verdict or other decision, the statement shall specify the particulars in which the evidence is alleged to have been insufficient, and, if no specifications are made, the statement is to be disregarded, a specification merely alleging that the evidence is insufficient to justify a certain finding set out is insufficient.

2.  Code of Civil Procedure, Section 4417, provides that specific performance cannot be. enforced against a party to a contract if he has not received an adequate consideration therefor. *Held* that, while a party seeking specific performance of a contract is required to set forth the consideration therefor, the burden of proof that such consideration is inadequate is on the party resisting specific performance.

3.  Notwithstanding a statute may have been taken from another state, the supreme court will decline to follow the decisions of such state upon the

subject when they are in direct conflict with its own decisions and are opposed to what appears to it to be the better reasoning.

4. Where, at the time of the making of an agreement to assign certain mining leases, options, and bonds, is was admitted that the assignor had expended at least $54,000 in developing the mine, without exposing any ore of commercial value, when the assignee agreed, in consideration of the assignment, to keep up the leases and bonds, continue the development, and, if the property appeared to the assignee to justify its purchase, to pay the assignor $54,000 therefor, without further risk or liability to the assignor, and thereafter the assignee made discoveries of great value in the mine, a finding that the consideration for the contract was not so inadequate as to preclude a decree of specific performance was justified, since the point of time to which the question of adequacy relates is the time of the formation of the contract.

5. Where, at the time of the making of an agreement to assign certain mining leases, options, and bonds, the assignor had made explorations along the vein, and had concluded that an adjoining mine owner was trespassing on a vein having its apex within the boundaries of the mine leased and assigned, either the assignor or the assignee might have prosecuted such alleged trespass; and hence the fact that the assignment required that the assignor should prosecute such action for the benefit of the assignee, who agreed to pay the expenses of the litigation, did not render the contract void as a conspiracy within Penal Code, Section 320, making it a misdemeanor for persons to conspire falsely to maintain any suit, etc.

6. Where an assignor of an interest in a mining claim retained a contingent interest in the property, his agreement, which was a part of the assignment, to prosecute a suit in his own name against an alleged trespasser for the benefit of the assignee, at the latter's expense, was not champertous.

7 Where an action to recover an interest in a mining claim was tried on the issues raised by the counterclaim seeking specific performance of an alleged contract by plaintiff to convey his interest in such claim to defendant, and the answer thereto, a decree of specific performance would not be reversed on the ground that defendant's answer to plaintiff's complaint alleged that plaintiff had forfeited all his rights to the mine prior to the date of the agreement sought to be enforced.

8. Where, in an action tried to the court, the evidence admitted without objection was sufficient to sustain the court's findings, it will be presumed on appeal that evidence erroneously admitted was not considered by the court in arriving at its conclusion.

9. Where a question objected to and excluded had been previously answered, the refusal of the court to permit its repetition was not error.

10. Error in exclusion of pleadings in another action, offered in evidence, cannot be reviewed, where they are not included in the statement on the motion for a new trial.

11. Where, in an action to recover an interest in a mining claim, a court entered a decree granting specific performance of an alleged agreement to convey plaintiff's interest to one of the defendants, it had no jurisdiction to subsequently modify such decree by adding a paragraph retaining jurisdiction with reference to the granting of an injunction restraining the operation of the mine.

12. Where appellant filed a brief containing 283 pages, much of which was repetition, and consisted of long arguments, extended excerpts from reported cases, and irrelevant matter, the cost of printing such brief would not be allowed on reversal of the judgment.

13. Where an action was tried to the court, and a female employe of one of the successful defendants had communications with the judge, and wrote letters to him, to which he replied, soliciting further conversation with relation to the case while the same was being argued before him, and such letters

containing references to benefits to be derived by the judge in case of a decision favorable to the writer's employer, and the judge, in an affidavit submitted, failed to deny the authorship of the reply, such acts entitled plaintiff to a new trial.

14. Affidavits, not explained away, casting grave suspicion upon the integrity of a court's decision, is ground for a new trial, without reference to the merits of the case.

*Appeal from District Court, Silver Bow County; E. W. Harney, Judge.*

ACTION by Miles Finlen against F. Augustus Heinze and others. From a decree entered in accordance with the prayer of said Heinze's counterclaim, from an order overruling a motion for a new trial, and from an order modifying the decree, plaintiff appeals. Reversed.

## STATEMENT OF THE CASE.

This action was originally commenced by the plaintiff, Finlen, against the defendants, Arthur P. Heinze, Montana Ore Purchasing Company, the Johnstown Mining Company and F. Augustus Heinze, to recover possession of the Minnie Healy lode mining claim. The complaint alleges that the plaintiff had certain leases and bonds from John Devlin, Mrs. Devlin and Mrs. Reilley upon an undivided three-fourths interest in the claim, and from Caroline V. Kelley upon an undivided one-twentieth interest therein; that under the terms of these leases and bonds he had the option to purchase such interests at any time prior to February 3, 1900, upon complying with the terms thereof, and paying the purchase price agreed upon; that he had kept all the terms of the leases and bonds by him to be kept or performed; "that on or about the — day of ——, 1899, and before the commencement of this action, and while plaintiff was in actual possession of the whole of said Minnie Healy claim, and, by virtue of said lease and agreements above mentioned, entitled to the possession of said Minnie Healy claim, the said defendants above named forcibly, and without plaintiff's consent, and against his will, and without any right so to

do, entered into and upon the said Minnie Healy lode claim and the underground workings thereof, and ousted and ejected plaintiff therefrom, and ever since have, and do now, retain from plaintiff the possession of said claim, and every part thereof."

The complaint contains a second cause of action for damages for ores extracted, and prays for an injunction restraining the defendants from further operating the mine.

To this complaint the defendants Arthur P. Heinze and the Montana Ore Purchasing Company filed an answer, denying that they, or either of them, ever at any time entered into the possession of the Minnie Healy lode claim, or any portion thereof, or mined or extracted any ore therefrom, or converted the same to their own use. The defendant Johnstown Mining Company interposed an answer denying the material allegations of the complaint, and setting up its claim to an undivided one-eighth interest in the property acquired from the rightful owner, without any notice of the plaintiff's outstanding claims. The defendant F. Augustus Heinze filed an answer admitting the allegations of the complaint with reference to the original ownership of the Devlins, Reilley and Kelley, the execution of the leases and bonds, and their transfer by mesne conveyance to the plaintiff, and denying the other material allegations of the complaint. The answer sets up new matters by way of affirmative defenses, and also an equitable counterclaim ("cross-bill," so called), in which, after reciting the history of the execution of the leases and bonds, their transfer to the plaintiff, his possession and working the claim thereunder (in which operations it is alleged he expended a large amount of money without being able to make discovery of any ore of commercial value), it is alleged the plaintiff represented to defendant Heinze that the claim would not justify his further prosecuting work or expending money on it, and that he was anxious to dispose of his options on the property. It is further alleged that on November 21, 1898, the plaintiff entered into an agreement with the defendant Heinze whereby he made an optional assignment of all

of his interests in the leases and bonds to Heinze, upon consideration that Heinze would go into possession of the property, work the same, keep the leases and bonds alive, and, if the property appeared to him (Heinze) to be of sufficient value to justify its purchase under the leases and bonds, then he would pay to the plaintiff, Finlen, $54,000. It is alleged that this assignment was made by a verbal agreement, but that plaintiff agreed to execute formal written assignments as soon as they could be prepared and presented to him; that he (Heinze) was put in possession of the property by the plaintiff, and, relying upon the agreement so made and the representations of the plaintiff, he fully kept and performed all the terms of the leases and bonds to be kept and performed by the lessee, and, with the full knowledge and consent of the plaintiff, expended large sums of money in exploring and developing the property; that he discovered and exposed large bodies of valuable ore, whereby the claim was greatly enhanced in value, and became worth much more than when he took possession of it; that he deemed himself justified in purchasing, and would purchase, the interests of the Devlins, Reilley and Kelley, and is ready and willing to pay to the plaintiff, Finlen, the agreed sum of $54,000, but that the plaintiff now refuses to make such written assignments, and denies that the defendant has any interest in the leases and bonds, or any of them, and has assumed to purchase from Mrs. Kelley her one-twentieth interest in the property, and has taken a deed therefor. The prayer of the counterclaim is that Finlen be required to make such assignments; that he be declared to be a trustee for the benefit of the defendant Heinze of the one-twentieth interest acquired from Mrs. Kelley; and that he be required to make transfer of the same, upon defendant Heinze paying into court the sum of $54,000, and the further sum which the plaintiff had paid to Mrs. Kelley for her interest in the property. To this counterclaim the plaintiff filed an answer, denying all the material allegations thereof, and to this answer the defendant Heinze filed a reply.

Upon the issues raised by the counterclaim, answer and reply,

the cause was tried to the court, sitting witout a jury, and, upon the conclusion thereof, findings of fact and conclusions of law were made in favor of the defendant Heinze, and in July, 1901, a decree in accordance with the prayer of his counterclaim was entered. On March 18, 1902, the court made certain modifications of the decree. The appeals are from the decree, from the order overruling plaintiff's motion for a new trial, and from the order of the court modifying the decree.

*Mr. W. W. Dixon, Mr. A. J. Shores, Mr. C. F. Kelley, Messrs. Forbis & Evans, Mr. D. Gay Stivers,* and *Mr. T. J. Walsh,* for Appellant.

The evidence is too contradictory and uncertain to permit a court of equity to exercise the power of specific performance. In all cases of specific performance, the evidence must be clear, conclusive and satisfactory. (22 Enc. Pl. & Pr. 1075; *Baggs* v. *Bodkin,* 32 W. Va. 566; *Cutsinger* v. *Ballard,* 115 Ind. 93; *Purcelle* v. *Miner,* 4 Wall. 513; *De Sollar* v. *Hanscome,* 158 U. S. 216; *O'Connor* v. *Jackson,* 62 Pac. 761-762; *Printup* v. *Mitchell,* 17 Ga. 567; *Rice* v. *Rigby,* 61 Pac. 290-294; *Brown* v. *Brown,* 33 N. J. Eq. 650; *Semmes* v. *Worthington,* 38 Md. 318; *Vanwert* v. *Chidester,* 31 Mich. 208; *Banks* v. *Weaver,* 48 Atl. 515; Pomeroy on Specific Performance of Cont. 510; Civil Code, Secs. 4280, 2035, 4417, 2160, 4419, 3930; *Magee* v. *McManus,* 70 Cal. 553; *Burnett* v. *Kullok,* 76 Cal. 535; 22 Am. & Eng. Ency. of Law, 1031; Adams' Equity, 78-79; Note to *Seymour* v. *Delancy,* 15 Am. Dec. 270, 299; 2 Pomeroy's Eq. Juris. 926-927; *Morrill* v. *Everson,* 77 Cal. 114; *Windsor* v. *Miner,* 124 Cal. 492; *Prince* v. *Lamb,* 128 Cal. 120; *Stiles* v. *Cain,* 66 Pac. 231; *Nicholson* v. *Tarpey,* 70 Cal. 608; *Foster* v. *Elk Fork Co.,* 90 Fed. 178-181; *Federal Oil Co.* v. *Western Oil Co.,* 112 Fed. 373-376; Addison on Contracts, Sec. 9; Clark on Contracts, 148; Browne on Statute of Frauds; *Phillips* v. *Thompson,* 1 Johns. Ch. 131; *Parkhurst* v. *Van Cortlandt,* 1 Johns. Ch. 372; Warvelle on Vendors, 705, 693.)

The contract, if not indefinite, is too incomplete for enforcement. (Pomeroy on Contracts, Sec. 154; *Smith* v. *Burnham,* Fed. Cas. 13,019.)

There being no mutuality in the contract it cannot be specifically enforced. (Civil Code, Sec. 4412; *Wakeham* v. *Barker,* 22 Pac. 431; *Schroeder* v. *Geminder,* 10 Nevada, 364; *Hall* v. *Center,* 40 Cal. 66; *Hawralty* v. *Warren,* 18 N. J. Eq. 134; *Johnston* v. *Trippe,* 33 Fed. 530; Lindley on Mines, Sec. 859; *Watts* v. *Keller,* 56 Fed. 1; *Conrad* v. *Rust,* 11 N. W. 265; *Geiger* v. *Green,* 13 Morrison's Min. R. 324; *Sturgis* v. *Galindo,* 59 Cal. 28; *Stanton* v. *Singleton,* 126 Cal. 657; *Marble Co.* v. *Ripley,* 10 Wall. 359; *Federal Oil Co.* v. *Western Oil Co.,* 112 Fed. 373; *Bromley* v. *Jefferies,* 2 Vernon, 415; *Jones* v. *Williams,* 37 L. R. A. 682-706.)

The contract is against public policy and void. (Clark on Contracts, 429; Penal Code, Sec. 320; *Johnston* v. *Shrewsbury,* 3 De G. M. & G.; *Mayger* v. *Cruse,* 5 Mont. 495; Frye on Specific Performance, 456, p. 222; 15 Am. & Eng. Ency. of Law, 2d Ed., 927; Bliss on Code Pleading, Sec. 351.)

No part performance of the contract has been shown. The contract relied upon is within the statute of frauds, being by parol, and is not enforceable except a part performance is shown. (Pomeroy on Contracts; Secs. 120, 107, 116, 104, 106; *Wright* v. *Packett,* 22 Gratt. 370; *Ackerman* v. *Fisher,* 57 Pa. St. 457; *Iron Age Pub. Co.* v. *W. U. Tel. Co.,* 83 Ala. 498; 20 Ency. Pl. & Pr. 435; 3 Pomeroy's Equity, Sec. 1409, note, p. 2174; *Bennett* v. *Dyer,* 35 Atl. 1004; 2 Pomeroy's Equity, 803, 807; *Burns* v. *Daggett,* 6 N. E. 727; *Cooper* v. *Thomason,* 45 Pac. 299; 2 Beach's Equity Juris. 617; *Foster* v. *Maginnis,* 89 Cal. 264; *Cooper* v. *Great Falls,* 30 S. W. 353; *Boulder* v. *Farnham,* 12 Mont. 1; *Colson* v. *Thompson,* 2 Wheat. 336-341; 22 Am. & Eng. Ency. of Law, 1006; Mechem on Agency, 718-719; *Fowler* v. *Sutherland,* 68 Cal. 414; *St. Louis* v. *Montana Co.,* 113 Fed. 900; Browne on Statute of Frauds, 490; *Wach* v. *Sorber,* 30 Am. Dec. 269; *Barrett* v. *Geisinger,* 35 N. E.

354-357; *Eckert* v. *Eckert,* 3 Penrose & W. 332-360; 2 War-
velle on Vendors, 786, 782; *Detrich* v. *Sharar,* 5 Pa. St. 521,
523; Pomeroy on Contracts, Sec. 114; *Phillips* v. *Thompson,*
1 Johns. Ch. 149; *Williams* v. *Morris,* 95 U. S. 457; *Blum* v.
*Robertson,* 24 Cal. 128-143; *Stoddard* v. *Bowie,* 4 Md. Ch.
482; *Ogsbury* v. *Ogsbury,* 115 N. Y. 290; *Ducy* v. *Ford,* 8
Mont. 239; *Wheeler* v. *Reynolds,* 66 N. Y. 228.)

The defendant in his answer set up that Finlen had forfeited
his rights under the leases and bonds, and undertook to prove
the fact by testimony; this defeats the defendants' right to a
specific performance of the contract. (*Willison* v. *Watkins,*
3 Peters, 43; Bigelow on Estoppel, 547; *Fears* v. *Merrill,* 50
Am. Dec. 229; *Conrad* v. *Lindley,* 2 Cal. 174; *Hicks* v. *Lavell,*
64 Cal. 20; *Pearis* v. *Covillaud,* 6 Cal. 617; *Whittier* v. *Stege,*
61 Cal. 239; *Thorne* v. *Hammond,* 46 Cal. 530; *Brown* v. *Co-
villaud,* 6 Cal. 566; *Green* v. *Covillaud,* 10 Cal. 317; *Willard*
v *Taylor,* 8 Wall. 557; *Kennedy* v. *Hazelton,* 128 U. S. 667.)

The cross-bill is insufficient. (Code of Civil Procedure, Sec.
1895; 20 Ency. Pl. & Pr. 458; 3 Pomeroy's Equity, 1408;
*Wenham* v. *Switzer,* 59 Fed. 947; Bliss on Code Pleading,
351; *Arguello* v. *Bours,* 67 Cal. 450; *Dorris* v. *Sullivan,* 90
Cal. 286.)

There is a variance between contracts as pleaded and as
proven. (*Iron Age Pub. Co.* v. *W. U. Tel. Co.,* 83 Ala. 498;
*Brown* v. *Brown* (Mich.), 11 N. W. 205; 2 White & Tudor's
Leading Cases in Equity, Pt. 1, 1027; *Allen* v. *Young,* 6 So.
747; *Magee* v. *McManus,* 70 Cal. 553; Browne on Statute of
Frauds, Chapt. 9; *Fuller* v. *Reed,* 38 Cal. 99.)

Plaintiff is entitled to a new trial on the ground of irregu-
larity in the proceedings of the court and of the adverse party,
through which plaintiff was prevented from having a fair trial.
(Code of Civil Procedure, Sec. 1171; 14 Ency. Pl. & Pr. p.
721; Hayne on New Trial & Appeal, 64, 48; *Coswell* v. *State,*
49 Ga. 103; *Walker* v. *Walker,* 11 Ga. 203; *Walker* v. *Hunter,*
17 Ga. 414; *Springer* v. *State,* 34 Ga. 381; *Redmond* v. *Royal
Ins. Co.,* 7 Phil. 167; *Keegan* v. *McCandless,* 7 Phil. 248;

*Cottle* v. *Cottle,* 6 Greenl. 140; *Ritchie* v. *Holbrooke,* 7 Serg. & R. 458; *Perkins* v. *Knight,* 2 N. H. 474; *McIntyre* v. *Hussey,* 57 Me. 494; *Hoffram* v. *Gallupe,* 55 Me. 565; *Turner* v. *Beardsley,* 17 Wend. 349; *Spire* v. *Nitkin,* 44 At. Rep. 13; *Whipple* v. *Preece,* 56 Pac. 296; *Peck* v. *Pierce,* 28 At. Rep. 524; *Morse* v. *M. O. P. Co.,* 105 Fed. 337; *Mattox* v. *U. S.,* 146 U. S. 140; *McDaniels* v. *McDaniels,* 40 Vt. 374; *Bradbury* v. *Cony,* 62 Me. 227; *Knight* v. *Freeport,* 13 Mass. 219; *Whitney* v. *Whitman,* 5 Mass. 405; Kerr on Frauds and Mistakes, 292; *Kemp* v. *Rose,* 1 Giff. 258; *Stoke* v. *Kuan,* 11 Wis. 407.)

The affidavits in support of the motion for new trial address to the court another question. There was another action pending in the United States court, begun sixteen days before this one, by Finlen against Devlin and others, asking specific performance, into which Heinze had come as an intervener, setting up the same facts in a cross-bill as he asserts in his cross-bill in this action; under these circumstances it was an abuse of discretion in the court to set this case down for trial. When two courts of coordinate jurisdiction both have before them actions involving the same issues between substantially the same parties, that court in which suit is last begun will stay its hand until a determination in the other court. (Freeman on Judgments, 118*a; Sharon* v. *Sharon,* 84 Cal. 430; *Bank* v. *Stevens,* 169 U. S. 432-439; *Powers* v. *Blue Grass Ass'n,* 86 Fed. 705-708; *Zimmerman* v. *So Relle,* 80 Fed. 417-420; *Farmers' L. & T. Co.* v. *Lake Street,* 177 U. S. 51-61; *Merriman* v. *Watson,* 38 Pac. 1108.)

The court erred in amending the decree. (*Morrison* v. *Dapman,* 3 Cal. 271; *De Castro* v. *Richardson,* 25 Cal. 49; *Scamman* v. *Bonslett* (Cal.), 50 Pac. 272; *Lees* v. *Freeman* (Utah), 57 Pac. 411; *Thompson* v. *Lynch,* 43 Cal. 483; *Hobbs* v. *Duff,* 43 Cal. 485; Black on Judgments, Sec. 165; *Parrott* v. *McDevitt,* 14 Mont. 203; *Montana Milling Co.* v. *Jefferies,* 16 Mont. 559.)

*Messrs. McHatton & Cotter, Messrs. Toole & Bach, Mr. J. M. Denny,* and *Mr. Charles R. Leonard,* for Respondents.

As to the affidavits filed by the plaintiff as in support of his motion for a new trial.

A new trial is only a statutory right; the right to move for it must be given by the statute and confined to the ground in the statute, and each subdivision of the statute is a separate and distinct ground and cannot be aided or supported by another ground, or matters pertaining to another ground, mentioned in the statute, but must stand or fall on its own assignment and the matters properly presented in support thereof. (Code of Civil Procedure, Sec. 1171; *Risse* v. *Gasch* (Neb.), 61 N. W. 616; *Townley* v. *Adams* (Cal.), 50 Pac. 550; *State* v. *Votaw,* 16 Mont. 308; *Froman* v. *Patterson,* 10 Mont. 107, 114; *McLeod* v. *Dickenson,* 11 Mont. 438; *State* v. *Mason,* 18 Mont. 362, 364; *Sullivan* v. *City of Helena,* 10 Mont. 134, 139; *Arnold* v. *Sinclair,* 12 Mont. 248, 259; *Valerius* v. *Richard,* 57 Minn. 443; *Burton* v. *Todd,* 68 Cal. 485; *State* v. *Fry,* 10 Mont. 409; *People* v. *Fair,* 43 Cal. 137; *People* v. *O'Brien,* 88 Cal. 488; *People* v. *Voll,* 43 Cal. 167; *People* v. *McCarty,* 48 Cal. 557, 559; *Brumagin* v. *Bradshaw,* 39 Cal. 25, 35; *Harding* v. *Vanderwater,* 40 Cal. 77, 83; *State* v. *Gawith,* 19 Mont. 48, 51; *Drexel* v. *Daniels* (Neb.), 68 N. W. 399; *Gregg* v. *Garrett,* 13 Mont. 10; *State* v. *Pilgrim,* 17 Mont. 311; *Lowe* v. *Lawrence,* 7 Neb. 192; *Gurner* v. *Dinsmore,* 8 Neb. 384; *Scoville* v. *Chapman,* 17 Ind. 470; *Horton* v. *Wilson,* 25 Ind. 316; *Fitch* v. *Bunch,* 30 Cal. 208; *Boston Tunnel Co.* v. *McKenzie,* 67 Cal. 485; *Mazkewitz* v. *Pimentel,* 83 Cal. 450; 14 Ency. Pl. & Pr. 884, and cases cited in notes; *Ex parte Gibson,* 31 Cal. 620, 625; *Pico* v. *Cohn* (Cal.), 13 L. R. A. 336.)

The affidavits were incompetent, irrelevant and immaterial, and not such as could or should be considered. (Code of Civil Procedure, Secs. 3228, 3229, 3124; *Wetzstein* v. *B. & M. Co.,* 66 Pac. 943, 947; *Bartlett* v. *U. S.,* 106 Fed. 884; *Wagoner* v. *Wagoner* (Md.), 10 Atl. 221; *Clear* v. *Clear,* 19 N. J. Eq. 37;

*State* v. *Carroll,* 85 Iowa, 1; *State* v. *Tosney,* 26 Minn. 262; *Cline* v. *Cline* (Ore.), 16 Pac. 282; *Van Voorhis* v. *Van Voorhis,* 94 Mich. 60; *Bradshaw* v. *Degenhart,* 15 Mont. 267, 273; *People* v. *McCoy,* 71 Cal. 398; *Bulliner* v. *People,* 95 Ill. 394; 12 Ency. Pl. & Pr. 623; *Berry* v. *DeWitt,* 27 Fed. 723; *Davis* v. *Allen,* 11 Pick. 468; *Fessenda* v. *Sayer,* 53 Me. 536; *Hunter* v. *Georgia,* 43 Ga. 483; *Arhart* v. *Stark,* 31 N. Y. S. 871; *Wynn* v. *Ry. Co.,* 17 S. E. 649.)

The trial court has the right to decide the question of irregularity or misconduct on the part of the court or the judge, or on the part of the jury, its decision has the same controlling effect in each instance, and ought to be given, and is entitled, to greater weight when it passes upon and disposes of a charge of irregularity or misconduct against itself or its judge than when it passes upon a like question with reference to the jury, for the reason that it has a better knowledge of the same—in fact, it must have personal knowledge in the one, where, in the other, it must exercise its judgment upon matters which are only brought to its attention by way of affidavit, and in instances in which, most frequently, a conflict or contradiction exists in the affidavits with reference to the fact. The judge has a right to insert in a bill of exceptions a statement that the matters complained of are not true, and thus dispose of the contention. (*People* v. *Azoff,* 105 Cal. 632, 39 Pac. 59, at 61.)

The irregularity or misconduct on the part of the jury are questions of fact to be determined by the trial court, and its determination thereof is final and not subject to revision on appeal. (*People* v. *Sullivan,* 129 Cal. 557, 62 Pac. 101, 103; *Hull* v. *Minneapolis St. Ry. Co.* (Minn.), 67 N. W. 218; *Peterson* v. *Faust* (Minn.), 14 N. W. 64; *Tierney* v. *Minneapolis & St. L. Ry. Co.* (Minn.), 23 N. W. 229; *Thompson* v. *Anderson* (Ia.), 63 N. W. 355; *Light* v. *Chicago, M. & St. P. Ry. Co.* (Ia.), 61 N. W. 380; *Morgan* v. *Ross,* 74 Mo. 318; *Gordon* v. *Trevarthan,* 13 Mont. 387, 389; *Hill* v. *Corcoran,* 15 Colo. 270, 25 Pac. 171.)

The same rule applies generally with reference to affidavits

on the ground of newly discovered evidence, where there is a conflict in the affidavits. (*Nyhart* v. *Pennington,* 20 Mont. 158, 162; *Territory* v. *Burgess,* 9 Mont. 57, at 80; *Holland* v. *Huston,* 20 Mont. 84.)

The affidavit of a juror is admissible to disprove misconduct and support his verdict. (*People* v. *Azoff,* 105 Cal. 632, 39 Pac. 59; *Saltzman* v. *Sunset T. & T. Co.,* 125 Cal. 501, 58 Pac. 169; *State* v. *Anderson,* 14 Mont. 541, 545; *State* v. *Jackson,* 9 Mont. 508, 522; *Kerr* v. *Lunsford* (W. Va.), 2 L. R. A. 668, 679.)

Where irregularity is charged on the part of the court and is disputed by counter-affidavits, the order denying a new trial will not be disturbed. (*People* v. *Wynn,* 133 Cal. 72, 65 Pac. 126.)

The party alleging error in refusing to grant a new trial must make the error affirmatively appear—must show an abuse of discretion. (*Mason* v. *Germaine,* 1 Mont. 263, 270; *Higley* v. *Gilmer,* 3 Mont. 433.)

The irregularity mentioned by the statute must be such as prevented a fair trial. It therefore rests on the person alleging irregularity to show affirmatively not only the irregularity complained of, but that injury resulted therefrom. (*State* v. *Gay,* 18 Mont. 51, 80; *Territory* v. *Burgess,* 9 Mont. 57, 81; *State* v. *Anderson,* 14 Mont. 541, 545; *Territory* v. *Hart,* 7 Mont. 489, 505; *Bradshaw* v. *Degenhart,* 15 Mont. 267, 272.)

Where the interference is by strangers and it does not appear that injury has been done, a new trial will be refused. (*People* v. *Boggs,* 20 Cal. 432, 436; 12 Ency. Pl. & Pr. 616, 619, and notes; *People* v. *Symonds,* 22 Cal. 349; *Clay* v. *Montgomery,* 102 Ala. 297; *Tiernan* v. *Trewick,* 2 Utah, 393, 397.)

The finding of the court is conclusive as to the affidavits and the statements contained therein. (*Bank* v. *Gagnon,* 25 Mont. 268.)

With reference to cases tried before a court, a different rule applies than to cases tried before a jury. (*Bank* v. *Greenhood,* 16 Mont. 449.)

Appellant contends that, irrespective of whether or not any prejudice is shown, the fact that conversations were had would be sufficient to justify the granting of a new trial. Appellant is mistaken. (*Koester* v. *Ottumwa,* 34 Ia. 41; *People* v. *Leary,* 39 Pac. 24; *U. S.* v. *Reid,* 12 How. 361; *Pittsburg Ry. Co.* v. *Porter,* 32 Ohio St. 328.; *Bradshaw* v. *Degenhart,* 15 Mont. 270.)

There is no public policy and no principle of right which would justify the setting aside of a correct and just decision for the purpose of administering a lesson, or for the purpose of punishing a party for improper conduct. (*Forrester et al.* v. *Boston & Montana, etc. Co.,* 23 Mont. 129; *State* v. *Clancy,* 61 Pac. 987.)

It was certainly proper for the lower court to determine that the affidavits presented by the appellant were false, and it did so, and the same being false, irrelevant and immaterial, were also impertinent, scandalous and contemptuous, and it was within the authority of the court to strike the same from the files. We ask this court to order the same expunged from this record. (*Powell* v. *Caine,* 5 Paige, Ch. 265; *Opdyke* v. *Marble,* 18 Abb. Prac. 376; 19 Ency. Pl. & Pr. 219; *People ex rel. Thomas* v. *Berry et al.,* 17 Colo. 322, 29 Pac. 904; *People* v. *Green,* 9 Colo. 506, 13 Pac. 514; *Van Etten* v. *Butt,* 32 Neb. 285, 49 N. W. 365; *Green* v. *Elbert,* 137 U. S. 615; *Kelley* v. *Bottcher,* 85 Fed. 55, s. c., 82 Fed. 794; *Cassidy* v. *County of Palo Alto* (Ia.), 12 N. W. 231; *Diamond Tunnel, etc. Co.* v. *Faulkner* (Colo.), 28 Pac. 472; *Ganzer* v. *Shiffbauer* (Neb.), 59 N. W. 98; *State* v. *Kennedy* (Neb.), 83 N. W. 87; *Brownell.* v. *Mc-Cormick,* 7 Mont. 12; *Anderson* v. *Cook,* 25 Mont. 340; *Sharp* v. *Hoffman,* 79 Cal. 404; *Gage* v. *Gunther,* 136 Cal. 340.)

MR. JUSTICE HOLLOWAY, after stating the case, delivered the opinion of the court.

1. It is contended that the evidence is insufficient to justify the findings of the court. An examination of one of the specifications, wherein the evidence is claimed to be insufficient, will

suffice for all, for they are in substantially the same form. "(1)
The evidence is insufficient to justify the finding that on the
21st day of November, 1898, or at any time, the plaintiff orally
assigned, conveyed, or set over to the defendant, F. Augustus
Heinze, all or any of the leases or agreements referred to in the
complaint and attached thereto as exhibits, or all of his right,
title, interest or claim thereunder to the Minnie Healy lode min-
ing claim." This is merely saying that the evidence is insuffi-
cient to justify finding No. 1 as made by the court, and is in no
sense a compliance with the provisions of Section 1173 of the
Code of Civil Procedure, which provides, among other things:
"* * * When the notice of motion (for a new trial) desig-
nates as the ground of the motion the insufficiency of the evi-
dence to justify the verdict or other decision, the statement shall
specify the particulars in which such evidence is alleged to be
insufficient. * * * If no such specifications be made the
statement shall be disregarded on the hearing of the motion. *
* *"

In construing Section 695 of the California Code of Civil
Procedure, identical with our Section 1173 above, and in dis-
cussing specifications in effect the same as those found in this
record, the supreme court of that state, in *Eddelbuttel* v. *Dur-
rell,* 55 Cal. 277, says: "In the case before us there is not even
an attempt made to specify the particulars in which the evi-
dence is alleged to be insufficient to sustain the findings of the
court below. Appellants might as well have said, in a general
way, that none of the findings of the court were sustained by
the evidence. The purpose of the statute is apparent. It was
to direct the attention of court and counsel to the particulars
relied on by the moving party, to the end that the evidence bear-
ing on the specifications of error might be inserted in the state-
ment and considered by the court." To the same effect is the
decision in *Parker* v. *Reay,* 76 Cal. 103, 18 Pac. 124.

In *King* v. *Lincoln,* 26 Mont. 157, 66 Pac. 836, the court
said: "It is contended that the evidence is insufficient to justify
the verdict. We cannot examine the evidence to determine

whether this contention is well founded, for the reason that the statement used in support of the motion for a new trial fails to specify the particulars wherein the evidence is insufficient. The only specification found in the statement is the following: 'The evidence is insufficient to support the verdict of the jury in finding for the plaintiff in the sum of ninety-five and 70-100 dollars, with interest. Said verdict is contrary to the evidence.' * * * As an attempt to point out any particular in which the evidence failed, or the absence of any material fact to warrant the jury in finding as they did, as is contemplted by the statute (Code of Civil Procedure, Sec. 1173), it is inexcusably insufficient (*Zickler* v. *Deegan,* 16 Mont. 198, 40 Pac. 410; Hayne, New Trial & App. Sec. 150), and the trial court was justified in ignoring it. It amounts to no more than a repetition of the ground for a new trial required to be stated in the notice of intention." See, also, *First National Bank* v. *Roberts,* 9 Mont. 323, 23 Pac. 718. We must assume, then, that the district court properly disregarded the statement in considering this ground of the motion for a new trial, and we decline to review the matter here.

2. It is next contended that the counterclaim is insufficient in that it does not allege that Finlen received an *adequate* consideration, and it is earnestly urged that an allegation that the consideration which passed was *adequate* is absolutely necessary. It is further contended that in any event the consideration alleged is in fact inadequate, and for that reason the contract ought not to be enforced. We are of the opinion that, if the counterclaim stopped short with an allegation that the consideration passing from Heinze to Finlen was *adequate,* it would be wholly insufficient as pleading a conclusion of law.

In *Mayger* v. *Cruse,* 5 Mont. 485, 6 Pac. 333, it is said: "The court, in such a case as this, when called upon to exercise the high power of compelling the execution of a contract *in specie,* should be informed of the entire nature and character of the contract, so as to determine for itself whether or not it is one which good conscience should enforce, free from objection,

and fair, just and reasonable, and equal in all its parts. The statement that 'the services were a fair and reasonable compensation for the interest so to be acquired' is the statement of a conclusion of law. The facts showing the character of the consideration should be before the court in this case before it should be called upon to say that such a contract is fair, just and reasonable in all its parts."

Notwithstanding our Code is similar to that of California, and may have been taken from that state, we decline to follow California decisions upon this subject when they are in direct conflict with the decisions of our own court and are opposed to what appears to us to be the better reasoning.

Section 4417 of the Civil Code provides: "Sec. 4417. Specific performance cannot be enforced against a party to a contract, in any of the following cases: (1) If he has not received an adequate consideration for the contract. (2) If it is not, as to him, just and reasonable. (3) If his assent was obtained by the misrepresentation, concealment, circumvention or unfair practices of any party to whom performance would become due under the contract, or by any promise of such party, which has not been substantially fulfilled; or (4) if his assent was given under the influence of mistake, misapprehension or surprise, except that where the contract provides for compensation in case of mistake, a mistake within the scope of such provision may be compensated for, and the contract specifically enforced in other respects, if proper to be so enforced." The evident meaning of this section is that any one of these subdivisions furnishes a defense to an action for specific performance; in other words, when specific performance is sought against a party he may interpose any one of the defenses named above, and if he can maintain it, he defeats the action. The burden of proof as to such defense is upon him who asserts it, and, while it is necessary for defendant Heinze to set forth the consideration for the contract sought to be enforced, the burden is then upon the plaintiff to show that such consideration is inadequte, if he would avail himself of that defense. Such was the rule at com-

mon law, and, in the absence of a statute fixing the burden of proof, the common-law rule prevaials.  (Section 5152, Political Code.)

However, laying aside the question of the burden of proof as to the adequacy of consideration, we are to consider the allegations of the counterclaim in the light of the surrounding circumstances.

In *Morrill* v. *Everson,* 77 Cal. 114, 19 Pac. 190, it is said: "We do not doubt that the point of time to which the question of adequacy must relate is the time of the formation of the contract." This is clearly the correct rule, and it is then quite immaterial what value the option to purchase the Minnie Healy claim had at any time subsequent to November 21, 1898, the date of the agreement as found by the court.  The increased value of the property, occasioned by the discovery of valuable ore bodies or from any other cause, cannot be considered in determining the question of the adequacy of the consideration which passed from Heinze to Finlen for his (Finlen's) interest in the property.  In his reply to the defendant's answer, plaintiff, Finlen, says:  "Admits that at the time the defendant (Heinze) took possession of said claim there was no ore of commercial value exposed therein." Upon cross-examination the plaintiff testified:  "I had spent in the neighborhood of $70,-000 on the Minnie Healy prior to November 21, 1898." In his answer to Heinze's counterclaim, the plaintiff admits "that he stated that he was desirous of transferring and assigning said leases and agreements." Upon his cross-examination he further stated that he had made a deposition in this same case prior to the date of the trial, in which he was asked this question:  " 'Q. Isn't it a fact, Mr. Finlen, that there was no ore extracted from the Minnie Healy mine during the year 1898 by you?  A.  I don't remember; I don't suppose there were. But if there were, it was a small complement.'  I expect I made that statement.  That is the fact as I remembered it at that time.  *  *  *  I expect that is correct; is what I say about it now.  The facts were fresher at that time, in 1900, than at

the present time." The witness Mahoney testified that he went to work on the claim for Heinze about December 23, 1898. With reference to the condition in which he found the mine, he says: "At the time I went there the tracks were all taken up and everything had the appearance of the mine being abandoned.  *  *  *  I had to put in a track on every level, clean up all the debris and places there where it was filled clear to the roof.  *  *  *  I had been acquainted with the Minnie Healy mine for a long time prior to the time I took charge there on the 23d of December, and, from my knowledge of it, it had not been a paying mine. There never was ore taken out sufficient to pay for the mining of it, or anywhere near it; there was scarcely any taken out at all.  *  *  *  There had been considerable development work done in the meantime. I was aware that there were quite a number of parties worked it, and threw it up, as it wouldn't pay. The Butte & Boston spent considerable money on it, and some other parties."

These were the conditions known to the parties at the time of their negotiations, and constitute the circumstances surrounding them, and which entered into their agreement. Notwithstanding the claim was situated contiguous to paying properties, the plaintiff had expended a large amount of money, was unable to expose any commercial ore, had removed the tracks, for some time had done no mining in the property, and was anxious to dispose of his option on it. As found by the court, the defendant Heinze agreed to go into possession of the property, work the same, keep the leases and bonds in full force and effect, and, if the property appeared to him to justify its purchase, he was to pay Finlen $54,000. This was one of the hazardous risks in mining operations. Finlen was already out at least $54,000, and this afforded him an opportunity to recover it without further outlay or risk, and in the meantime to have the leases and bonds kept alive at the expense of another party. On Heinze's part, he assumed the risk of losing whatever means he employed in exploring the property, or of making discoveries which Finlen had not been able to make, and securing to himself

the option to purchase a property which might be fabulously rich, or in the end a losing venture. In view of all these surrounding circumstances, we cannot say that the consideration pleaded in the counterclaim as passing from Heinze to Finlen was inadequate, or the agreement set forth, on its face, unjust or unreasonable.

3.   It is next contended that, if the contract as found by the court was actually made between the plaintiff and the defendant Heinze, it is against public policy and void, and specific performance thereof will not be enforced. This is predicated upon the finding of the court that a part of the consideration for the agreement of November 21, 1898, was that Finlen should prosecute an action against the Boston & Montana Company in his own name, and secure an injunction against that company from further mining upon a vein which it was claimed had its apex in the Minnie Healy claim, and on its dip departed so far from the perpendicular that it passed without the side lines of that claim and into the property operated by the Boston & Montana Company; that Heinze should pay all the expenses of such litigation, and should have whatever proceeds were realized therefrom.

Section 2240 of the Civil Code reads as follows: "That is not lawful which is: (1) Contrary to an express provision of law. (2) Contrary to the policy of express law, though not expressly prohibited; or (3) Otherwise contrary to good morals." Apparently the theory upon which the appellant proceeds is that Finlen and Heinze entered into a conspiracy against the Boston & Montana Company, or that Heinze was guilty of champerty or maintenance. Section 320 of the Penal Code makes it a misdemeanor for two or more persons to conspire falsely to maintain any suit, action or proceeding; and if this agreement of November 21, 1898, comes within the meaning of that section, then it is contrary to an express provision of the law, and will not be enforced. As was said in *Mayger* v. *Cruse, supra:* "The contract should not admit of doubt or suspicion; for example, as to its mutuality, as to its being one not

opposed to public policy, or one illegal in its nature." "Maintenance" is defined to be an officious intermeddling in a suit that in no way belongs to one, by maintaining or assisting either party, with money or otherwise, to prosecute or defend it. (6 Cyc. 851.) "Champerty," which is a species of maintenance, has been defined to be the unlawful maintaining of a suit, in consideration of some bargain to have a part of the thing in dispute or some profit out of it, the champertor agreeing to carry on the suit at his own expense. (6 Cyc. 850.) Where, however, the person promoting the suit of another has any interest in the subject-matter, whether it be legal or equitable, great or small, vested or contingent, certain or uncertain, it affords him just reason for participating in the suit, and does not subject him to the charge of officious intermeddling with matters in which he has no interest, or bring his agreement respecting the same within the definition of champerty or maintenance.

The evidence tended to show that prior to November 21, 1898, Finlen had made some explorations in the Minnie Healy claim to ascertain whether or not the mining operations carried on by the Boston & Montana Company through the Leonard shaft were upon a vein having its apex within the Minnie Healy claim, and that Finlen himself had talked about bringing a suit in his own name against that company for the alleged trespass. This condition prevailed when the agreement of November 21, 1898, was entered into. Finlen transferred to Heinze an option to purchase under the option which he (Finlen) had on the property, and thereby Heinze acquired, and Finlen still retained, a contingent interest in the property, the subject-matter of the controversy. Finlen apparently had some reason for believing that the Boston & Montana Company was extracting ores from veins belonging to the Minnie Healy claim, and Heinze, from his examination of the property, thought the suit might be maintained successfully. So far as anything to the contrary appears in the record, either Finlen or Heinze might have prosecuted the suit in perfect good faith, and therefore the essential element of a "conspiracy," as defined by Section 320

above, was absent, while the interest of each in the property, the subject-matter in controversy, was such as to take the agreement out of the definition of champerty or maintenance. (*Knight* v. *Sawin,* 6 Me. 361; *Lord* v. *Dale,* 12 Mass. 115, 7 Am. Dec. 38.) It is apparent, however, that there is a material variance between the contract pleaded and the one proved. No mention is made in the counterclaim of any agreement by Finlen to commence this action, while the court finds that that was a part of the consideration for the contract sued upon.

4. The appellant contends that defendant Heinze cannot have specific performance of the alleged agreements, for the reason that in his answer to the plaintiff's complaint he (Heinze) alleges that prior to November 21, 1898, the plaintiff had forfeited all rights which he had under the agreements or any of them. But the cause now before us was tried upon the issues raised by the counterclaim and the answer thereto. That defense was interposed to the complaint, which was for the recovery of the possession of the Minnie Healy claim, and was an action at law; while the matter before us is a suit in equity, in effect instituted by the filing of the counterclaim, and the only pleadings before us are the counterclaim, the answer thereto, and the reply. The question is therefore not properly before us. We are not to be understood by this as saying that such apparently inconsistent defenses cannot be pleaded. Upon this we express no opinion.

5. Numerous errors are assigned upon the action of the court in admitting certain testimony which it is now claimed was irrelevant and immaterial. But the cause was tried to the court sitting without a jury, and the presumption must be indulged that such evidence, if improperly admitted, was not considered in arriving at a conclusion. The evidence against the admission of which no objection was made appears to be sufficient to sustain the findings of the court.

In *Montana Ore Purchasing Co.* v. *Butte & Boston Consol. Mining Co.,* 25 Mont. 427, 65 Pac. 420, this court said: "The court admitted, over the objection of the plaintiff, evidence

tending to show the character of the buildings which the defendants were engaged in erecting, and the amount intended to be expended thereon. Counsel for appellant contend that this evidence was irrelevant and immaterial, and that the action of the trial court in admitting it was prejudicial. We are not prepared to say that the evidence was not properly admitted, but, conceding that plaintiff's position is correct, we think the error without prejudice. Presumably the trial court based its findings upon such of the ecidence before it as was competent, excluding from consideration such as had no weight or relevancy. The other evidence in the record, the competency of which is unquestioned, was sufficient to justify the findings, and the order will not therefore be reversed."

6. Upon cross-examination of the witness McHatton for the defendant Heinze, he was asked whether or not he had dictated a particular paragraph of the complaint in the suit of *Finlen* v. *Boston & Montana Company*. An objection to the question was sustained. An examination of the record shows that, just before this question was asked the witness, he had testified that he did dictate the pleadings on behalf of the plaintiff in that cause. So that the question, even if proper, had been answered, and we cannot say that the court committed error in refusing to permit a repetition.

As a part of this cross-examination it was also sought to introduce the pleadings in that case, but an objection to their admissibility was sustained. However, the plaintiff has not included the pleadings thus offered in the statement on motion for a new trial, and we are unable to say whether or not any error was committed in the court's ruling. (*Haupt* v. *Simington,* 27 Mont. 480, 71 Pac. 672; *Tague* v. *John Caplice Co.,* 28 Mont. 51, 72 Pac. 297.)

We have examined the other errors specified upon the orders made by the court in excluding certain evidence, but find no merit in them.

7. The decree in this suit was entered in July, 1901. On March 18, 1902, the court modified the decree by adding to one

paragraph the following: "Jurisdiction with reference to the injunction and all matters pertaining thereto being retained by the court on the motion and application of the plaintiff herein." Appellant complains that the amendment was made without any showing whatever, over the objection of the plaintiff, and not on his motion, and that it was unauthorized. Upon the application made to this court for an injunction pending the appeal herein (*Finlen* v. *Heinze,* 27 Mont. 107, 69 Pac. 829), this court had occasion to consider somewhat that amendment, and with reference to it said: "In our opinion, the particular amendment in question was wholly unauthorized, no matter at whose instance it was made, or what evidence there was tending to show that the matter contained in the amendment was in fact a part of the decree as rendered in the first instance. When that court rendered its final judgment, at the conclusion of the case, settling the rights of the parties, its jurisdiction over the subject-matter and the parties ceased, except for the purpose of entertaining a motion for a new trial, or such other proceedings as might properly and lawfully be had looking to a revision or correction of its action, or to enforce the decree as rendered. It had no authority, inherently or by statute, or by any rule of this court, to retain jurisdiction for any purpose pending the appeal." We adopt that language as expressing our views upon the matter at this time.

8. The appellant has filed herein a so-called "brief," consisting of 283 pages, and the respondent, not to be outdone, has filed one of 422 pages. These consist of long arguments, extended excerpts from reported cases, and matters which have no proper place in a brief. Much of them is repetition, and, instead of materially aiding the court in a determination of this cause, they have imposed a prodigious amount of needless labor, and have been of little, if any, practical assistance. Such an imposition upon the court ought to be rebuked by striking the so-called "briefs" from the files, and ordering briefs which in substance and extent come within the meaning of that term to be filed instead. In this instance the prevailing party will not

be permitted to recover, as part of his costs, the expense of printing his so-called "briefs."

9.  It is next contended that the district court erred in refusing the plaintiff a new trial. The notice of intention to move for a new trial, which furnishes the basis for all subsequent efforts to have the decision set aside, specifies the following, among other grounds: "(1) Irregularity in the proceedings of the court, and irregularity in the proceedings of the adverse parties, whereby the plaintiff was prevented from having a fair trial."

The record contains a number of affidavits filed on behalf of the plaintiff in support of his motion. These contain recitals which, if true, demonstrate that the district judge who tried this cause was completely lost to all sense of decency and propriety, and that he made of the occasion, while off the bench, a carnival of drunkenness and debauchery, in company with a female employe of the Montana Ore Purchasing Company, one of the defendants to the action. It is charged in these affidavits that, during the time this cause was on trial and undetermined, numerous written messages passed between Mrs. Brackett, the employe referred to, and Judge Harney; that on May 9, 1901, the so-called "dearie" letter was written by Mrs. Brackett and delivered to Judge Harney. A copy of the letter is attached to and made a part of the affidavits. This letter, profuse in the expressions of the writer's affection for Judge Harney—a married man living with his family—would hardly be considered a proper court record, but for its direct allusion to this suit then being tried, and for the significance of the answer thereto, which, it is charged, was written by Judge Harney, addressed to Mrs. Brackett, and, at the judge's request, delivered to her. The opening statement of that letter is as follows:

"My Dear Mrs. Brackett:

"I have received your letter and will be glad to talk further with you on the subject therein mentioned. On account of pain in my ankle I did not sleep last night. I have been listening

to arguments concerning the Minnie H. and they will probably consume all of tomorrow. I will see you tomorrow evening if you are at leisure. I have some matters that I must attend to this evening. I appreciate your solicitude and your feelings, which are reciprocated, as you know, and I beg you not to be uneasy."

When it is considered that the so-called "dearie" letter contains an offer of financial assistance to Judge Harney, reminds him who his friends were before he was "Judge" Harney, contains the statement that as to his future after he leaves the bench she is empowered to promise him certain things which will assure that most generously, and then refers to a statement which she says Judge Harney made to her respecting the evidence in this case, the full import of the answer is apparent. There is absolutely nothing in that so-called "dearie" letter which could with any show of propriety be the proper subject of discussion between the judge trying a cause and an employe of one of the parties to the action, and yet the answer thereto is an open invitation to Mrs. Brackett to discuss further the subject-matter of her letter. Judge Harney did give countenance to the charges made against him to the extent of denying one or two of the specific matters alleged, but his affidavit is most remarkable for what it does not say. The affidavits filed on behalf of the plaintiff set forth, with great particularity of time and place, numerous instances of the judge's association and revelry with Mrs. Brackett in Butte and elsewhere during the time the cause was being tried and determined, and it does seem most remarkable that, having made an affidavit, Judge Harney should have signally failed to deny the specific charges made against him, and notably failed to deny that he wrote the answer to the so-called "dearie" letter. It may be that no wrong was done in this instance, but, if so, the record before this court for review is in a most unfortunate condition.

The cause was tried to the court sitting without a jury, the judge performing the dual office of court and jury, and having the determination of all questions involved, both of law and fact.

If the cause had been tried to a jury, and a record was presented here containing like charges of irregularity by or on behalf of one of the parties in attempting to influence a single juror, it is hardly conceivable that this court would hesitate for a moment to set aside the verdict, if in favor of the offending party. Upon this subject the courts have been of one opinion.

In *Huckell* v. *McCoy,* 38 Kan. 53, 15 Pac. 870, where the attorney for one of the parties, in his closing remarks to the jury made use of improper language, the verdict in favor of his client was set aside.

In *Vollrath* v. *Crowe,* 9 Wash. 374, 37 Pac. 474, the plaintiff and one of the jurors were playing cards and drinking together in a saloon, and out walking together, and talking—though not about the case—during the time of its trial, and a verdict for the plaintiff was set aside, and with respect to the matter the court said: "Trials of causes should have the appearance of fairness, and it would tend greatly to bring judicial proceedings into disrepute if matters of this kind should be overlooked or tolerated. We fully agree with the contention of appellants that a verdict rendered by a jury, a portion of whom are found to have been promenading the street, conversing, playing at cards and drinking with the successful litigant, has the appearance of anything but fairness; and let it once be understood that such things are permissible, and we will be treated to the spectacle of litigants vying with each other, in both private and public places, in attempts to win the good will and favor of the jury, and the administration of the law greatly scandalized thereby."

In *Wright* v. *Eastlick,* 125 Cal. 517, 58 Pac. 87, one of the jurors attended a dance with a party to the action. The two drank together, and appeared intimate. A verdict for the offending party was set aside, the court saying: "In the early 60's a district judge in this state, whose district embraced mining counties, was impeached on the ground, among others, that during the trial of a cause he left the bench and visited a saloon,

and there drank and caroused with witnesses and the parties, or one of the parties."

Nothing herein said shall be construed as intimating an opinion by this court that any of the defendants had actual knowledge of what Mrs. Brackett was doing; but her principal was a corporation, which acts only through individuals, and the rule is uniform that irregularities on the part of an agent, employe, relative or interested friend, will be imputed to the principal.

In Thompson on Trials, Sec. 2560, it is said: "The rule is applied with almost equal stringency whether such attempts proceed from the prevailing party himself, from his friends, or from officious third persons."

In *Bradbury* v. *Cony,* 62 Me. 223, 16 Am. Rep. 449, it was charged that the son of the defendant had taken some of the jurors and showed them the property in controversy. A verdict for the defendant was set aside therefor.

In *Palmer* v. *Utah Northern Ry. Co.,* 2 Idaho, 291, 13 Pac. 425, the father of one of the plaintiffs, and the grandfather of another, during the time the cause was being tried, visited and patronized a saloon owned by one of the jurors, and, though in his affidavit he said that he had been patronizing the same saloon for the past six years, a verdict for the plaintiffs was set aside therefor. The court said: "We are unable to say what effect this liberal and conspicuous patronage during the trial may have had upon the mind of the juror whose bar he was patronizing. It is not necessary for us to find that it had effect upon the verdict, in order to sustain this assignment of error as to irregularities of an adverse party. It is enough to find that it was calculated so to do. It is perhaps impossible for the juror himself to appreciate what influence this patronage may have had upon his mind."

In *Burke* v. *McDonald,* 2 Idaho, 1022, 29 Pac. 98, the superintendent of the defendant furnished some refreshments to and drank with the jurors, and a verdict for his principal was set aside therefor.

In *McDaniels* v. *McDaniels,* 40 Vt. 364, a friend of the prevailing party had talked with a juror about the case, and the verdict was set aside.

In *Nesmith* v. *Insurance Co.,* 8 Abb. Prac. 141, a third party attacked the credibility of a witness for the defendant in the presence of jurors, and a verdict for the plaintiff was set aside.

In *Knight* v. *Freeport,* 13 Mass. 218, a son-in-law of one of the parties talked to a juror, and told him that the case was one of great consequence to him, and the verdict was set aside.

Whatever may be said as to the authorship of the so-called "dearie'" letter, the fact still remains that Judge Harney had the opportunity to deny in no uncertain terms his authorship of the answer thereto, and failed to do so; and so long as the record stands here containing so many specific charges which are undenied, and notably the authorship of that answer, we decline to accept, as conclusive upon this court, the statement of the district judge that he determined the cause upon the law and the evidence, uninfluenced by any other consideration whatever.

In *Peck* v. *Pierce,* 63 Conn. 310, 28 Atl. 524, the judge trying the cause read certain entries of account which had not been offered in evidence, but which bore directly upon the point in controversy, and, notwithstanding he made the statement that he did not consider them in arriving at his decision, and that they did not *influence him at all,* the court set aside the decision, and said: "Now, there can be no sort of doubt that the trial judge intended to, and did, so far as it is possible for any one to do such a thing, dismiss these entries from his mind, and did not consider them in arriving at his decision, and that he was fully persuaded that he had succeeded in the attempt. This court, however, has, in cases like this, with a good degree of uniformity, refused to accept such statements as conclusive, on the ground that 'the operations of the human mind are so subtle, and the influences which affect it so difficult to be appreciated, that it is utterly improbable, not to say impossible,' for the party making them to know whether the evidence influenced

him or not; holding that all that such statements can mean is that the maker of them was unconscious of the influence."

Judge Harney's affidavit is, in effect, that in all proceedings pertaining to the case he was entirely uninfluenced by any one, that he determined the cause upon the law and the evidence, that he had no knowedge that any one was attempting to influence him in his action, and that during the time he was considering the case he was not disabled or incapacitated by the use of intoxicating liquors.

If Judge Harney did not write the answer to that so-called "dearie" letter, he could have said so in few words and in positive terms; if he did write it, that fact alone would come too near demonstrating that Mrs. Brackett had exerted an undue influence over him with respect to the cause, or at least cast too grave a suspicion upon the integrity of the proceedings to permit the result to stand.

A corrupt attempt to influence a verdict of a jury or decision of a court is always a ground for a new trial, without reference to the merits of the case, and whether successful or not. The law is so sensitive upon this subject that affidavits, not explained away, casting suspicion of such misconduct on the prevailing party, will avoid the judgment. (Thompson on Trials, Sec. 2560; *Huston* v. *Vail*, 51 Ind. 299.)

Litigants have a right to expect that no discussion of the cause will be had out of court with the judge or jury trying the same.

While the application of the rule here laid down may result in great injustice in isolated cases, the wholesomeness of the doctrine cannot be questioned. The judgment in this case will be set aside, not as a punishment for the defendants, but that no unlawful interference with the dignified and orderly course of judicial proceedings may be given countenance in the jurisprudence of this state.

No judgment of a court of justice so tainted with corruption as the record leaves this should stand, and its cancellation in this instance will be the evidence of the determination of this

court to pursue to the utmost its constitutional and lawful authority, to the end that public confidence in our judicial system may not be lessened, and that the fountain of justice may be kept pure.

The judgment and orders appealed from are reversed, and the cause is remanded with directions to the district court to grant a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY: A new trial is ordered in this case on the ground of irregularity on the part of defendants by which the plaintiff was prevented from having a fair trial. While I do not doubt that the views expressed by my brethren in the last paragraph of the foregoing opinion are just, and that the conclusion reached will go far toward maintaining public confidence in the administration of justice in this state, I nevertheless have grave doubts whether the facts bring the case within the purview of the statute. (Code of Civil Procedure, Sec. 1171.) Judges sustain a different relation to litigants from that occupied by jurors, and are to be judged by a different standard. This has always been the rule under those systems which recognize the distinctions between courts of law and equity; and while, under our system, this distinction has been abolished, and suits in equity are no longer tried *de novo* by the appellate court upon the evidence submitted to the trial court, under which method of procedure the elements of bias, prejudice and corruption in the trial judge are eliminated, it is a matter of great doubt whether the statute was intended to cover such a case as is presented by the record before us.

I shall not dissent, however, nor attempt a discussion of the principles involved. I content myself with this expression of doubt on this point.

I concur in the views expressed in the last paragraph of the opinion as to the conduct of the trial judge pending the hearing of this cause. I also concur in the conclusions reached in the other paragraphs of the opinion.